**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

$186,416.00 IN U.S. CURRENCY,
            *Defendant.*

——————————

UNITED MEDICAL CAREGIVERS
CLINIC, INC.,
            *Claimant-Appellant.*

No. 07-56549

D.C. No.
CV-05-06703-
SVW-SH
Central District of
California,
Los Angeles

ORDER

Filed April 26, 2011

Before: Michael Daly Hawkins, Marsha S. Berzon, and
Richard R. Clifton, Circuit Judges.

Order;
Dissent by Judge Berzon

———————————————————

## COUNSEL

Steven R. Welk, U.S. Department of Justice, for the plaintiff-appellee.

Paul L. Gabbert, Santa Monica, California, for the claimant-appellant.

Eric Honig, Marina Del Rey, California, for amicus curiae National Association of Criminal Defense Lawyers.

———————————————————

## ORDER

Claimant United Medical Caregivers Clinic ("UMCC") prevailed in a civil forfeiture proceeding initiated by the United States. *See United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942 (9th Cir. 2009). The Civil Asset Forfeiture Reform Act ("CAFRA") provides that in "any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A).

UMCC has moved for an award of attorney fees pursuant to CAFRA and has specifically requested that the fee award be paid directly to its counsel rather than to UMCC itself, as the claimant. The government does not contest UMCC's entitlement to fees as a substantially prevailing party but has objected to the amount sought by the motion and has opposed the request that the fee award be paid directly to UMCC's attorney.

We refer the matter to the Appellate Commissioner to calculate the amount of an appropriate fee award. We instruct the Appellate Commissioner to use the lodestar method, and conclude that the actual fee agreement between UMCC and its attorney may be taken into account but is not by itself determinative in calculating the appropriate amount of the fee award. As for the payee of the fee award, we conclude that attorney fees awarded under CAFRA are payable to the claimant, not to claimant's attorney, so the fee awarded here will be payable to UMCC.

## 1. The amount of the fee award

CAFRA does not specify precisely how fee awards should be calculated. The statute simply provides that the government is liable for "reasonable attorney fees and other litiga-

tion costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A).

This court has not yet addressed the proper method of determining a fee award under CAFRA. Other courts have used the lodestar method to determine the amount to be awarded under CAFRA. *See U.S. v. One Star Class Sloop Sailboat*, 546 F.3d 26, 37-8 (1st Cir. 2008); *U.S. v. $60,201 in U.S. Currency*, 291 F. Supp. 2d 1126, 1129-1130 (C.D. Cal. 2003). In this case UMCC proposes that its fees be determined that way, but the government argues that the lodestar approach should not be used and that the fee should primarily be based on the actual agreement between UMCC and its attorney. UMCC has declined to make its fee agreement available, and the government asks that its production be ordered.

The lodestar approach is the method customarily used to determine attorney fees under fee-shifting statutes. *See Blanchard v. Bergeron*, 489 U.S. 87, 93-94 (1989) (the lodestar method determines the statutory fee award under 42 U.S.C. § 1988); *Nadarajah v. Holder*, 569 F.3d. 906, 916 (9th Cir. 2009) (EAJA). We see no reason to depart from that approach under CAFRA and conclude that the lodestar method should be used in calculating fees in this case.

That does not mean that the actual fee agreement cannot be relevant to the fee determination. Under § 1988 and EAJA, the actual fee agreement does not act as a cap on the amount of statutory attorney fees awarded. *See Blanchard,* 489 U.S. at 93-94; *Corder v. Gates*, 947 F. 2d 374, 377-78 (9th Cir. 1991); *Nadarajah*, 569 F.3d. at 916. However, the agreement can be considered when determining a reasonable fee under the lodestar approach. *See Blanchard,* 489 U.S. at 93; *Corder*, 947 F. 2d at 377-8. We see no reason to depart from this practice in the CAFRA context, either. UMCC is required to disclose its agreement with its attorney.

This matter is referred to the Appellate Commissioner for the purpose of determining the amount of reasonable attorney

fees and other litigation costs reasonably incurred by UMCC, consistent with this order. The Appellate Commissioner may issue an order awarding fees and other litigation costs. Any such order is subject to a motion for reconsideration by this panel. *See* Circuit Rule 39-1.9.

## 2.    The CAFRA fee award should be paid to the claimant

CAFRA does not explicitly identify to whom an award for fees and costs under that statute are to be paid. It simply says that "the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A).

Prior to CAFRA's enactment in 2000, attorney fees could be sought by successful claimants in forfeiture actions under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (d). *See $60,201.00 U.S. Currency*, 291 F. Supp. 2d at 1130. EAJA provides that a court "shall award to a prevailing party other than the United States fees and other expenses" in specified circumstances. 28 U.S.C. § 2412 (d)(1)(A). The language used in CAFRA and EAJA is somewhat different. EAJA specifically assigns fee awards to "the prevailing party," but CAFRA does not, stating only that "the United States shall be liable for reasonable attorney fees." 28 U.S.C. § 2465(b)(1)(A).

UMCC reads this difference to mean that CAFRA fees should go directly to attorneys instead of the prevailing litigant. Following the Supreme Court's recent decision in *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), we conclude otherwise.

*Ratliff* resolved a longstanding circuit split on the question of whether fee awards under EAJA were payable to the party or the attorney by holding that EAJA awards are to be paid to the prevailing litigant. *Id*. at 2525-29. In part, the Court based its decision on the specific language in EAJA, noted above, directing payments to the "prevailing party."

"[P]revailing party is a 'term of art' that refers to the prevailing litigant." *Id.* at 2525. CAFRA does not contain similar language directing fees to the prevailing party.

The Court's decision in *Ratliff* did not stop there, however. It went on to highlight the absence of language in EAJA explicitly directing fees to attorneys. Comparing EAJA with a provision in the Social Security Act making fee awards payable "to such attorney," *see* 42 U.S.C. § 406 (b)(1)(A), the Court concluded that "given the stark contrast between the SSA's express authorization of direct payments to attorneys" and the absence of such language in EAJA, it would not interpret EAJA to "contain a direct fee requirement absent clear textual evidence supporting such an interpretation." *Ratliff*, 130 S. Ct. at 2527-28. As the Court noted, Congress "knows how to make fees awards payable directly to attorneys where it desires to do so." *Id.* at 2527.

*Ratliff* counsels that in the absence of explicit instructions from Congress awarding fees to the attorney, direct payment to the attorney should not be presumed. *Id.* There is no such explicit instruction in CAFRA.

Direct payment to the attorney is the exception, not the rule. "The Supreme Court has made it clear that, in general, statutes bestow fees on parties, not upon attorneys." *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment*, 89 F.3d 574, 577 (9th Cir. 1996). For example, attorney fee awards under 42 U.S.C. § 1988 or under the antitrust laws are payable to parties. *See Evans v. Jeff D.*, 475 U.S. 717, 731-33 (1986); *Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir. 1999) ("In the absence of a contractual assignment to counsel, § 1988 requires that attorney fee awards be made directly to the prevailing party"); *Image Technical Service, Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1357 (9th Cir. 1998) ("Any fee award in an antitrust case goes to the successful plaintiff, not to plaintiff's counsel."). Unless

the statute specifies payment to the litigant's attorney, payment to the attorney is not assumed.

UMCC argues that by not including EAJA's language mandating fee awards to the "prevailing party" in CAFRA, Congress signaled its intent to reject EAJA's method of awarding attorney fees. Without further evidence, the use of the passive phrase "the United States shall be liable for reasonable attorney fees" in CAFRA, rather than "shall award to a prevailing party" in EAJA, cannot be read as a clear expression of congressional intent to create a direct fee award to counsel. If, as UMCC argues, Congress intended to liberalize fee awards in forfeiture cases with CAFRA, it did so by eliminating EAJA's language exempting the government for payment of fees where the "position of the United States was substantially justified," not by providing for fee awards to be paid directly to attorneys. 28 U.S.C. § 2465(b)(1)(A). Neither legislative history nor "clear textual evidence," *Ratliff*, 130 S. Ct. at 2528, supports UMCC's contention that direct fee payment to counsel was one of the reforms envisioned by Congress in CAFRA.[1]

UMCC attempts to extract a direct fee requirement from two phrases in 28 U.S.C. § 2465(b)(1)(A) — that the government is "*liable for*" attorney fees "*incurred by* the claimant" (emphasis added). This effort is not persuasive. The word "liable," as UMCC agrees, means to be "legally obligated." *See Black's Law Dictionary* (9th ed. 2009). It does not indicate to whom the liability is owed. UMCC is right that under fee-shifting statutes, fees may be considered to be "incurred" by the client even though the client was represented free of charge. *See Nadarajah,* 569 F.3d at 916 (EAJA); *Phillips v.*

---

[1]While the legislative history does not clearly indicate the intended recipient of the fee award, the remarks of CAFRA's legislative supporters suggest that it was intended to award "attorney fees and costs to *property owners* who prevail against the government in civil forfeiture cases" (emphasis added). Statement of Sen. Hatch, 145 Cong. Rec S. 14,629 (Nov. 16, 1999).

*General Services Admin.*, 924 F.2d 1577, 1583 (D.C. Cir. 1991) (Civil Service Reform Act). But a statute that makes the government "liable for" fees "incurred by" a party does not necessarily entitle counsel to a direct fee award.

UMCC and amicus curiae National Association of Criminal Defense Lawyers (NACDL), appearing in support of UMCC's position, offer policy justifications in support of awarding the fees and costs to the claimant's attorney directly rather than to the client. If fee awards are paid to the claimant, they argue, attorneys may not be paid for their work, thus reducing the likelihood of competent representation and defeating congressional intent. It is pointed out that CAFRA fees due to be paid to the client may be offset in part or in full by the client's preexisting debts to the government, leaving nothing to be paid to the attorney.[2] That argument did not persuade the Supreme Court in *Ratliff*, however. The Court explicitly noted that EAJA fees are "subject to offset where a litigant has outstanding federal debts." *Ratliff*, 130 S. Ct. at 2528. The government in that case actually asserted the right to offset a debt owed by the claimant to the federal government against the fee award, producing exactly the result projected by UMCC's argument, but that did not lead the Court to conclude that payment of EAJA fees should be made directly to counsel. There is nothing in the background, text, or purpose of CAFRA that suggests that the same result should not apply to CAFRA fees. UMCC's policy arguments

---

[2] The papers filed in this case do not reveal whether or why this might have practical impact in this case. The Supreme Court, speaking in particular with regard to fees awarded under 42 U.S.C. § 1988, has noted "the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipients of the fees" awarded under the statute. *Ratliff*, 130 S. Ct. at 2529. We have not been informed about any offset the federal government might claim against UMCC. Nor have we been informed of any other for concern on the part of UMCC's attorney that he might not get paid if the fee award is not paid directly to him. Nonetheless, the parties have disputed the issue, and our order will need to identify to whom payment should be made.

must be made to Congress, which could draft the fee award statute to specify payment to counsel. CAFRA was not written that way.

We decline to order direct payment to counsel. The attorney fees and litigation costs awarded in this case are payable to UMCC as the successful claimant.

The motion is referred to the Appellate Commissioner for further proceedings consistent with this order.

**REFERRED TO THE APPELLATE COMMISSIONER**

BERZON, Circuit Judge, dissenting:

I respectfully dissent.

I agree with the majority's conclusion that fees awarded under the Civil Asset Forfeiture Reform Act (CAFRA) should be determined using the lodestar approach. I do not agree, however, that the CAFRA attorney fees provision requires that attorney fees be paid directly to the client, rather than to the attorney. I would hold that the statutory provision leaves the question whether fees are paid to the attorney or to the client to the discretion of the district court, to be determined on a case-by-case basis.

### A. *Astrue v. Ratliff*

The majority relies heavily for its interpretation of the CAFRA attorney fees provision on *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010). *Ratliff* held that attorney fees under a particular statute, the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), are paid directly to the client. Although I agree that *Ratliff* is helpful as an interpretive guide, its guid-

ance leads, in my view, down quite a different path than the one the majority follows.

The interpretative method used in *Ratliff* is heavily textual, concentrating on the precise wording of EAJA. There is no mention in *Ratliff* of any presumption that fees are usually awarded to the attorney or to the client. Instead, the only presumption is that the terms, structure, and history of each statute should govern.

On examination, *none* of the factors that the Court found persuasive in *Ratliff* as to why EAJA directs fees to the client are present in CAFRA. And some of the factors relied on in *Ratliff* support the conclusion that fees awarded under CAFRA need not always be paid to the client.

*First*, and most importantly, the text of EAJA directs that courts "shall *award to a prevailing party* . . . fees and other expenses . . . incurred by that party . . . ." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). The Court in *Ratliff* held that "prevailing party" refers to the "prevailing litigant," and so concluded that the text of EAJA, literally read, directs that fees must be paid to the litigant, meaning the client. 130 S. Ct. at 2525.

CAFRA contains no such express direction. The CAFRA attorney fees provision states only that "the United States shall be liable for . . . reasonable attorney fees . . . ." 28 U.S.C. § 2465(b)(1). It doesn't say to whom the United States must pay the fees. Given the substantial weight that the Court in *Ratliff* placed on the phrase "to a prevailing party," the absence of a parallel phrase in CAFRA is sufficient to subvert any comparison to EAJA or reliance on *Ratliff* in this case.[1]

---

[1] One of the few textual similarities between CAFRA and EAJA is the phrase "attorney fees" itself. The Court in *Ratliff* rejected the argument that use of that phrase established that fees were payable to the attorney; the Court found the argument insufficient to overcome the opposite

*Second*, other textual differences between EAJA and CAFRA further undermine the majority's reliance on *Ratliff*'s interpretation of EAJA. The Court's interpretation was buttressed by subsections of EAJA that "distinguish the party who receives the fees award (the litigant) from the attorney who performed the work that generated the fees." *Id*. at 2525-26. For instance, EAJA requires a "prevailing party" to submit "an itemized statement *from any attorney*," *id*. at 2526, implying that the term "prevailing party" is not a reference to the attorney. In contrast, no subsection of CAFRA differentiates between the claimant and the claimant's attorney.

Similarly, the text of EAJA "award[s] to a prevailing party" " 'the reasonable expenses of expert witnesses' and 'any study, analysis, engineering report, test, or project,' " yet no party in *Ratliff* suggested that those costs were "payable directly to the vendors who provide[d] the relevant services." *Id*. at 2527 (quoting 28 U.S.C. § 2412(d)(2)(A)). In other words, the term "prevailing party" in EAJA could not be read as including the prevailing litigant's attorney without creating the anomaly that "prevailing party" would *also* include other vendors involved in the litigation. Thus, the Court held that the term "prevailing party" referred to the prevailing litigant, and that the text of EAJA treats "attorneys on par with other service providers"—they all must recover their fees from the litigant. *Id*.

CAFRA, unlike EAJA, does not use language awarding expert expenses "to a prevailing party" or "to the claimant." Instead, CAFRA simply provides that the "United States shall be liable for . . . attorney fees and other litigation costs . . . ."

requirement mandated by the "plain text" of EAJA—namely, that EAJA awards fees to "prevailing parties." 130 S. Ct. at 2526-27. Beyond suggesting that we shouldn't rest our interpretation of CAFRA solely on inclusion of the phrase "attorney fees," the Court's treatment of the argument does not provide much guidance for the question before us.

28 U.S.C. § 2465(b)(1)(A). So the anomaly identified in *Ratliff* that would arise if EAJA were interpreted to award fees directly to the attorney doesn't arise in CAFRA.

*Third*, the Court contrasted the language of EAJA to that of the Social Security Act (SSA), which expressly authorizes payment of fee awards directly to attorneys. *Id.* at 2527-28 (citing 42 U.S.C. § 406(b)(1)(A) (allowing for the "payment to such attorney" of attorney fees)). The Court took this statutory difference to suggest that "Congress knows how to make fees awards payable directly to attorneys where it desires to do so." *Id.* That comparison is consistent with the notion that a provision including statutory text different from both EAJA and SSA connotes different results. In other words, Congress has made fees payable directly to attorneys (SSA) and directly to prevailing parties (EAJA), but CAFRA does neither, so neither course should follow.

*Finally*, the textual differences between CAFRA and EAJA are especially pertinent given that, prior to the passage of CAFRA, forfeiture claimants had to rely on EAJA to seek fee awards in forfeiture cases. *See, e.g., United States v. 22249 Dolorosa St.*, 190 F.3d 977, 981-82 (9th Cir. 1999). As Congress was presumably aware of the text of EAJA, the textual divergence in CAFRA should be given some import. *See, e.g., Corley v. United States*, 129 S. Ct. 1558, 1567 (2009) (applying presumption that meaning should be ascribed to differences in statutory texts).

In sum, the Court's analysis in *Ratliff* was a textual one, a mode of analysis that points to a different result under CAFRA than under EAJA. The Court made no mention of a presumption that fees are ordinarily awarded to either the party or the attorney.

Nor is any such presumption discernible in other caselaw. The majority's observation that statutes ordinarily bestow fees on parties (not attorneys) might be correct as a descriptive

matter, *see* Maj. Op. at 5393-94, but the text of the statutes identified by the majority *specifically direct* payment to parties, and so cases interpreting those provisions provide no guidance here.

For example, the majority relies on a statement in *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment*, 89 F.3d 574 (9th Cir. 1996) that "[t]he Supreme Court has made it clear that, in general, statutes bestow fees upon parties, not upon attorneys." *Id.* at 577. To support that proposition, the *Virani* court cited cases that interpreted the attorney fees provision in 42 U.S.C. § 1988. *Id.* (citing *Evans v. Jeff D.*, 475 U.S. 717, 731-33 (1986); *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990); *Willard v. City of Los Angeles*, 803 F.2d 526, 527 (9th Cir. 1986)). The text of § 1988, unlike CAFRA, directs fees to the "prevailing party." *See* 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow *the prevailing party* . . . a reasonable attorney's fee." (emphasis added)).[2] Likewise, the majority points to cases holding that fee awards in antitrust cases go to successful plaintiffs, not plaintiffs' counsel. *See* Maj. Op. at 5393-94 (citing *Image Technical Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1357 (9th Cir. 1998)). But the text of the fees provisions pertinent to antitrust cases direct fees to the "person who shall be injured . . . by reason of anything forbidden in the antitrust laws," meaning the plaintiff, not the plaintiff's attorney. 15 U.S.C. § 15(a); *id.* § 26 ("[T]he court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.").

In other words, the cases identified by the majority simply interpret provisions that expressly direct fees to plaintiffs rather than to plaintiffs' attorneys; they apply no presumption of such a result. And, in fact, *Virani* itself (in which we

---

[2]Moreover, the cases cited in *Virani* concern whether a client can *waive* fees. Thus, the court in *Virani* meant only that the *right* to fees belongs to the client and so is waivable by him as part of the litigation. The cases actually do not address to whom fees are payable if awarded.

observed that statutes generally bestow fees on parties) did not apply any such presumption. Instead, it held that the payment of fees under the False Claims Act must be made directly to the plaintiff's counsel, even though the text of the provision at issue could be read as directing that fees be paid to the client. *See* 89 F.3d at 578 (interpreting 31 U.S.C. § 3730(d)(1), which provides that "qui tam plaintiff[s]" "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs"). I therefore cannot agree with the majority that after *Ratliff*, "a clear expression of congressional intent to create a direct fee award to counsel" is necessary. Maj. Op. at 5394. Instead, *Ratliff* counsels a statute-specific approach to the question, devoid of any universal rule, presumption, or clear statement requirement.

## B.   The Statutory Text of CAFRA

Proceeding in that fashion, and so without the presumption or clear statement requirement applied by the majority, I am not persuaded that there are statute-specific reasons for concluding that fees under CAFRA must always be paid directly to the client.

To support its argument that CAFRA fees should be universally awarded to litigants, not attorneys, the government first points out that the subsection containing CAFRA's attorney fee provision, 28 U.S.C. § 2465(b)(1), provides for the award of three things: (1) attorney fees and litigation costs; (2) post-judgment interest; and (3) either actual interest paid to the government resulting from investment of the disputed property or an imputed amount of interest where no interest was actually earned. The government argues that, because *interest* would almost certainly be paid directly to the claimant, payment of attorney fees should not be treated differently.

But the statutory text of CAFRA does not require that conclusion. There is no reason to think that all payments provided

for by subsection (b)(1) should be payable to the same person. Subsection (b)(1) provides that the "United States shall be liable for" those three payments, but it does not indicate to whom they are to be paid. The neutral language, applicable to all three kinds of payments, most sensibly contemplates payment to whomever is appropriate—for *interest*, to the claimant, and for *attorney fees*, to the attorney *or* the client, depending on circumstances such as whether the client has already paid the fees.

Because there is nothing in subsection (b)(1) requiring that fees be paid to the claimant, the government advances a different argument premised on another subsection of CAFRA. The government points out that subsection (b)(2)(A) provides that "[t]he United States shall not be required to disgorge the value of any intangible benefits nor make any *other payments to the claimant* not specifically authorized by this subsection." 28 U.S.C. § 2465(b)(2)(A) (emphasis added). The government maintains that the reference to "other payments to the claimant" in (b)(2)(A) is a cross-reference to the three payments listed in subsection (b)(1), mentioned above. Therefore, the argument goes, attorney fees are "payments to the claimant," not the attorney.

The government's suggestion that subsection (b)(2)(A) cross-references (b)(1) is, in my view, incorrect. Again, subsection (b)(2)(A) reads: "The United States shall not be required to disgorge the value of any intangible benefits nor make any *other payments to the claimant* not specifically authorized by this subsection." 28 U.S.C. § 2465(b)(2)(A) (emphasis added). The "other payments to the claimant" acknowledged in (b)(2)(A) is most naturally read as a reference to the "other payments to the claimant" that are mentioned in that *same* sentence "the value of any intangible benefits." *Id.* In contrast, with regard to the liability created by subsection (b)(1), no "payments *to the claimant*" are "specifically authorized." Rather, subsection (b)(1) establishes liability, but, as we have seen, that subsection does not indicate

the person to whom the payment is to be directed. So if one reads subsection (b)(2)(A) as a cross-reference to subsection (b)(1), the net effect seems to be the opposite of the one for which the government argues: As subsection (b)(1) does not specifically authorize "payments *to the claimant*," it must be that the payments specified in subsection (b)(1) are *not* to be made to the claimant, but to someone else. That result, however, would be an odd and unlikely way of dictating that fee awards are not made to claimants. The more sensible interpretation is that subsection (b)(2)(A) is self-contained and does not affect subsection (b)(1) at all.

The government next emphasizes that subsection (b)(1)(A) reads "reasonable attorney fees and other litigation costs reasonably *incurred by the claimant*." 28 U.S.C. § 2465(b)(1)(A) (emphasis added). According to the government, the statutory scheme is compensatory and contemplates making a claimant whole. The government maintains that ordering payment to the claimant for those costs he agreed to pay would be consistent with this compensatory scheme, whereas payment directly to the attorney without regard to the actual payment agreement would not further the statute's compensatory goals.[3]

This argument is no more successful than the converse argument—that the phrase "incurred by the claimant" indicates that fees are to be paid to the *attorney*—correctly rejected by the majority. As noted by the majority, EAJA, like CAFRA, requires that recoverable fees be "incurred" by the client, yet prevailing parties are entitled to fees under EAJA even if they were represented free of charge. *See Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009). Just as "a statute that makes the government 'liable for' fees 'incurred by' a

---

[3]This argument dovetails with the government's position, properly rejected by the majority, that the traditional lodestar method is not the appropriate standard for the calculation of fees under CAFRA, and instead the calculation should be based on what the claimant agreed to pay his counsel.

party does not necessarily entitle *counsel* to a direct fee award," Maj. Op. at 5395 (emphasis added), that language likewise does not necessarily mean that the fees are payable to the claimant rather than the lawyer.

Instead, the consideration that fees can be "incurred by" a client who did not agree to or actually pay any fees indicates to me that the choice of the neutral "is liable for" terminology was deliberate, and connotes similar flexibility in determining to whom the fees are to be paid. Paying fees directly to the client in instances where the client did *not* pay the attorney, or paid an amount less than market rates, could lead to a windfall to the client, or to the client's creditors. The majority's position does not account for this windfall possibility at all.

## C. CAFRA Permits District Courts to Direct Fee Awards to Litigants *or* Their Attorneys

The sum of the matter is that the statutory text of CAFRA doesn't expressly direct fees to the client *or* to the attorney, and the textual arguments advanced by the government don't mandate a particular result. In other words, CAFRA isn't directly analogous *either* to EAJA (directing fees to the client) or to SSA (directing fees to the lawyer).

What EAJA and the SSA do show, as already noted, is that Congress is perfectly capable of making clear to whom the court is to order payment of fees, yet chose in CAFRA to use passive, neutral language. *Compare* 28 U.S.C. § 2412(d) (EAJA) *and* 42 U.S.C. § 406(b)(1)(A) (SSA) *with* 28 U.S.C. § 2465(b)(1) (CAFRA). It did so even though fees were until then being awarded in forfeiture circumstances under EAJA, so there was a readily applicable model had Congress intended for fees to be universally paid to claimants. *See, e.g., 22249 Dolorosa St.*, 190 F.3d at 981-82 (discussing application of EAJA in forfeiture action).

This choice, it seems to me, is best implemented by permitting district courts to direct fees to either the claimant or the attorney, depending on the circumstances. District courts faced with such a determination might consider: (1) the particulars of the agreement between the attorney and the client; (2) the likelihood that the attorney would be adequately compensated if fees were paid to the client; and (3) whether payment to the client or to the attorney would best further the goals of CAFRA.

That approach would allow district courts to avoid the windfall possibilities noted above. It would also correct an anomaly identified by the government—namely, many of the arguments in favor of awarding fees directly to the attorney assume that the attorney has not already been compensated by the client, but that often will not be the case, because some clients will pay a retainer or an hourly fee. Where the client has already paid the attorney an amount equivalent to the award, then the client likely has a superior claim to the fee award, and the district court can direct payment of the award accordingly. Likewise, if the client has paid the attorney, but less than the full amount of the award, the district court can order the payment of fees appropriately, some to the client and some to the attorney.

## D.   Final Considerations

For the reasons given, CAFRA's statutory text is best interpreted as leaving the question up to district courts to determine on a case-by-case basis. That result is also preferable to the majority's approach, because other factors, discussed below, indicate that universally awarding CAFRA fees directly to clients rather than to attorneys is bad practice. I recognize that many of these considerations also apply to other attorney fees provisions, including ones like EAJA that expressly direct fees to the client. But here we are interpreting a provision that leaves the question open. Acknowledging

these considerations cautions against creating for the first time a presumption that fees should always be paid to the client.

*First*, one might assume that the practical implications of who first receives a fee award are minimal, because attorneys and clients can enter into contracts dictating who will ultimately receive the money. For example, while it is the party's right to "waive, settle, or negotiate" *entitlement* to receive fees in a particular case, attorneys and clients can create private fee arrangements limiting that ability. *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990). In other words, attorneys can avoid the uncertainty that results from a party's ability to waive a right to receive fees by requiring a contractual agreement that the party won't waive that right. Contractual arrangements can also dictate the ultimate distribution of an award, regardless of whether the award is directly payable to the prevailing party or to the attorney. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir. 1999) ("[Section] 1988 requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client.").

But, as noted by the majority, fees paid directly to clients may be offset by the client's pre-existing debts to the government, leaving nothing for the attorney. *See* Maj. Op. at 5395. And, unlike a client's ability to waive or negotiate an *entitlement* to a fee award, it is not clear that parties can contract around the uncertainty posed by offsets against debts owed by a claimant to the government, as such debts might constitute a lien superior to the attorney's contractual or other assignment-based right. *Cf. Comm'r v. Banks*, 543 U.S. 426, 437 (2005) ("State laws vary with respect to the strength of an attorney's security interest in a contingent fee and the remedies available to an attorney should the client discharge or attempt to defraud the attorney"). I don't know whether such an argument, if advanced by the government, would be meritorious. But the scenario threatens a plausible complication

that results from a blanket rule that fees are awarded to the client.

*Second*, certain characteristics specific to asset forfeiture caution against universally awarding CAFRA fees to claimants. Asset forfeiture occurs in circumstances involving crimes, and so CAFRA actions seem particularly likely to involve clients who may not fulfill contractual obligations to pay their attorneys. Moreover, if the government has seized all or nearly all of the claimant's property, the claimant may not have the means to pay fees in advance, and the attorney must agree to defer payment of fees until resolution of the case. Finally, given the backdrop of CAFRA actions, clients might be more likely to owe pre-existing debts to the government, and therefore fees might be more likely to be subject to offset in CAFRA actions than in other circumstances. In any event, CAFRA's purpose of facilitating legal representation for claimants will be undercut if fees are always awarded to the client, because lawyers will reasonably fear that they might never actually receive compensation, and so they might decline to represent CAFRA clients at all.

*Third*, whether attorney fees are paid directly to the client or to the attorney has important tax consequences. For instance, in *Sinyard v. Commissioner*, 268 F.3d 756 (9th Cir. 2001), a plaintiff brought suit under the Age Discrimination in Employment Act (ADEA) against his former employer. *Id.* at 757. The plaintiff entered into an agreement with a law firm promising to the firm one third of any amount obtained in the lawsuit. The parties eventually settled, and the district court approved of a settlement agreement allocating one-third of the settlement to "attorneys' fees recoverable pursuant to [the attorneys' fees provision of the ADEA]." *Id.* at 757-58. The fees were then paid directly to the law firm. The Commissioner of the IRS later assessed a deficiency against the plaintiff for failure to report the attorney fees as income. *Id.* at 758.

We agreed with the Commissioner that the plaintiff was liable for the deficiency under the theory that the plaintiff had

bound himself to pay the law firm, and when the defendant satisfied this obligation, its payment constituted a discharge of the plaintiff's obligation. *Id*. (citing *Old Colony Trust Co. v. Comm'r*, 279 U.S. 716, 729 (1929)). We found that theory applicable on the facts of *Sinyard* because "[u]nder the ADEA, attorney's fees are available to prevailing plaintiffs, not to plaintiff's counsel." *Id*. at 759.

The logic of *Sinyard* suggests that the same result would not be required if the attorney fees were ordered paid directly to the attorney. If that were the case, then the defendant would not have been satisfying an obligation owed by the plaintiff to the law-firm, but rather it would have been satisfying its own obligation to pay attorney fees to the attorney. As the fees would never have been receivable by the client, they likewise would not have been taxable to the client.

A few years after *Sinyard*, the Supreme Court decided *Commissioner v. Banks*, 543 U.S. 426 (2005). In that case, the Court held that a money judgment or settlement paid to a plaintiff's attorney under a contingent-fee agreement must be reported as income to the plaintiff. *Id*. at 430. The Court, however, declined to decide the question addressed in *Sinyard* —namely, whether attorney fees awarded under statutory fee-shifting provisions (in that case, under § 1988) must be treated as income to the plaintiff.[4] *Id*. at 439.

The Court did recognize that if attorney fees were taxable to the client, then a plaintiff could "lose[ ] money by winning the suit." *Id*. at 438. For instance, if the plaintiff sought only injunctive relief, or if the damages awarded were otherwise substantially less than attorney fees, then the tax loss could result in a net after-tax loss for the plaintiff. *Id*. But the Court

---

[4]The Court could avoid deciding that question, because in *Banks* "[t]here was no court-ordered fee award;" the fee paid to the attorney upon settlement "was calculated solely on the basis of the private contingent-fee contract." *Id*. at 439.

stated that such circumstances were unlikely to arise going forward, because Congress enacted the American Jobs Creation Act of 2004 (AJCA) shortly after the claims in *Banks* arose. The AJCA amended the Internal Revenue Code to allow taxpayers to deduct "attorney fees and court costs paid by, or on behalf of, the taxpayer in connection with" actions brought under certain statutes that authorize fee awards. *See* 26 U.S.C. § 62(a)(20)-(21) & (e)(1)-(18).

Importantly, though, while AJCA would correct this taxation problem for attorney fees related to suits under a substantial number of statutes—including actions under the Social Security Act, 42 U.S.C. § 1395y(b)(3)(A); the False Claims Act, 31 U.S.C. § 3730; the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. §§ 623, 633a; the Rehabilitation Act, 29 U.S.C. §§ 791, 794; the Employee Retirement Income Security Act, 29 U.S.C. § 1140; the Family and Medical Leave Act, 29 U.S.C. § 2615; the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.*; the Fair Housing Act, 42 U.S.C. §§ 3604 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*, and many others—the statute does *not* list CAFRA, and so presumably it would not correct this problem for the award of attorney fees under CAFRA.[5] *See* 26 U.S.C. § 62(a)(20) & (e)(1)-(18).

In short, if fees are awarded directly to the client, they might be taxed as income to the client, even where the client is represented pro bono and the fees are immediately turned over to the lawyer. And, unlike under most other fee-shifting statutory provisions, the client apparently cannot deduct the award from his income. These factors threaten the inequitable

---

[5]EAJA is also absent from the statutes listed in AJCA, suggesting that attorney fees awarded under EAJA might be taxed as non-deductible income for the prevailing party, even where the client never sees the money. The Court in *Ratliff* made no mention of the tax consequences of its decision.

result of a net after-tax loss for the prevailing litigant, a result that could be avoided if district courts had discretion to determine on a case-by-case basis whether attorney fees are awarded to the attorney or to the client.

## Conclusion

Leaving the question of to whom fees are to be paid up to district courts to determine on a case-by-case basis is the appropriate interpretation of the CAFRA attorney fees provision. I would so hold, and therefore respectfully dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2011 Thomson Reuters.