**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

ROBERT JOSEPH MOSER,
        *Claimant-Appellant*,

        v.

$28,000.00 IN U.S. CURRENCY,
        *Defendant*.

No. 13-55266

D.C. No.
3:10-cv-02378-
LAB-KSC

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
March 2, 2015—Pasadena, California

Filed October 6, 2015

Before: Stephen Reinhardt, N. Randy Smith,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz;
Concurrence by Judge Reinhardt

# SUMMARY[*]

**Attorney's Fees / Civil Forfeiture**

The panel vacated the district court's order awarding attorney's fees under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") to a claimant who prevailed against the federal government in a civil asset forfeiture action, and remanded for recalculation of the award.

The lodestar method, which calculates an attorney's fee award by multiplying the market billing rate by the hours reasonably expended, applies to CAFRA awards even when there is a contingency agreement.

The panel rejected the claimant's argument that, by itself, the government's failure to challenge the evidence before the district court mandated an award of the total amount requested in the attorney's fee motion. The panel further held that the government, through its inaction in the district court, waived any right on appeal to present new evidence to challenge the district court's factual findings of reasonableness, nor could the government challenge the absence of an evidentiary hearing in the district court.

Applying these principles to claimant's fee application, the panel held that the district court erred in several respects when it reduced the amount of claimant's fee request. First, the district court failed to afford claimant's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

attorney's hourly rate a presumption of reasonableness. Second, the district court erred in ignoring the hourly rates discussed in three declarations from forfeiture experts. Third, the district court's analogy to indigent criminal representation conflicted with CAFRA's purposes of facilitating adequate legal representation for forfeiture claimants. Fourth, the district court erred in finding that claimant's claimed hourly fee should be lowered because much of the work could have been delegated to associates with lower billing rates at a large law firm. Finally, the district court erred by relying on an award almost nine years old in determining the prevailing market hourly rate.

The panel held that the district court erred in reducing the hours claimed by claimant's attorney because the district court's stated reasons for eliminating claimed hours did not correspond to the amount of time deducted. The panel also held that the district court erred by reducing the lodestar because of the contingency fee.

Judge Reinhardt concurred in the opinion, but wrote separately to emphasize that the district court's role in reviewing unopposed fee requests is a modest one.

---

**COUNSEL**

Devin J. Burstein (argued), Warren & Burstein, San Diego, California; Richard M. Barnett; San Diego, California, for Claimant-Appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter and Bruce C. Smith (argued), Assistant United States Attorneys, San Diego, California, for Plaintiff-Appellee.
Benjamin D. Steinberg (argued) and Mahesha P.

Subbaraman, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, Minnesota, for Amicus Curiae Americans for Forfeiture Reform.

**OPINION**

HURWITZ, Circuit Judge:

Robert Moser prevailed against the federal government in a civil asset forfeiture action and became entitled to an award of attorney's fees under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2465(b)(1)(A).  The district court's fee award was significantly less than Moser requested, and he now appeals.  Because the district court committed several errors in considering the unopposed fee request, we vacate and remand for recalculation of the award.

**I.**

During a search of Moser's house for marijuana cultivation, federal agents seized $28,000 in currency.  The United States later instituted proceedings to forfeit the money.  Moser retained Richard Barnett, an experienced forfeiture specialist, to oppose the government's claim and assert Moser's ownership of the funds.  The fee agreement provided that Barnett would be paid the greater of one third of recovery or any statutory fee award.

Asserting that government agents interrogated Moser without a *Miranda*[1] warning and conducted warrantless

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

searches of his home, Barnett filed a motion to suppress all evidence relating to the seized currency. As the district court noted, although these constitutional violations were uncontested, "[t]he government, for reasons that are not clear, obstinately opposed the claim" and "aggressive[ly]" litigated the case. The district court granted Moser's motion to suppress and his motion for summary judgment, and ordered the money returned to him.

As the prevailing party, Moser then moved for attorney's fees under CAFRA. *See United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 754 (9th Cir. 2011). He requested fees of $50,775, based on Barnett's hourly rate of $500 and 101.55 hours of work. The motion was supported by declarations from attorneys knowledgeable about legal fees in the San Diego market, including several specializing in forfeiture litigation. Barnett provided a detailed accounting of his hours and eliminated 25.95 hours from the fee request because he considered the work "fruitless or unnecessary." The government's opposition to the motion rested entirely on the argument that any award should be capped by the contingency fee in the retention agreement.

The district court rejected the government's argument, correctly noting that the lodestar method, which calculates a fee award by multiplying the market billing rate by the hours reasonably expended, *see Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989), applies to CAFRA awards even when there is a contingency agreement, *see $186,416.00 in U.S. Currency*, 642 F.3d at 754–55. But the court awarded Moser only $14,000 in fees. Disregarding three declarations from forfeiture specialists, the district court incorrectly stated that Moser's declarations did not accurately reflect the forfeiture market rate because they discussed only litigation fees generally. The court then

purported to apply its own knowledge of the market, and, based on its characterization of Barnett's work as essentially criminal in nature and a nine-year-old fee award mentioned in one of the declarations, determined that $300 was a reasonable hourly rate.

Turning to the hours expended, the court found that Barnett gave the government's aggressive and often specious litigation arguments "more respect than [they] deserved," and that such an experienced attorney should have expended fewer hours opposing the government's arguments. Although the court specifically identified as questionable only 6.75 hours of work on a reply brief, it reduced the hours for which fees would be awarded from 101.55 to 60. Finally, the court found that the resulting lodestar calculation of $18,000 should be reduced by an additional $4,000 because of the contingent fee agreement.

## II.

We have jurisdiction over Moser's appeal of the fee award under 28 U.S.C. § 1291. In general, we review a district court's determination of whether a requested fee is reasonable for abuse of discretion. *See Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1011 (9th Cir. 2004). "[F]actual findings are reviewed for clear error." *Native Vill. of Quinhagak v. United States*, 307 F.3d 1075, 1079 (9th Cir. 2002). "The legal analysis underlying a fee decision is reviewed de novo." *Childress*, 357 F.3d at 1011.

## III.

Moser's opening brief contends that the government's unsuccessful argument below that any CAFRA award was capped by the contingency fee in the retention agreement "waived any challenge to the amounts [he] proposed." Put

differently, Moser argues that the district court was required to award the entire requested fee because the government did not dispute either proffered component of the lodestar analysis—the hourly rate or hours expended.

The evidentiary burdens governing fee motions are well established.  The applicant has an initial burden of production, under which it must "produce satisfactory evidence" establishing the reasonableness of the requested fee.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).  This evidence must include proof of market rates in the relevant community (often in the form of affidavits from practitioners), *see Camacho*, 523 F.3d at 980, and detailed documentation of the hours worked, *see Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).  If the applicant discharges its legal obligation as to the burden of production, the court then proceeds to a factual determination as to whether the requested fee is reasonable.  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582–83 (9th Cir. 2010); *Straw v. Bowen*, 866 F.2d 1167, 1169 (9th Cir. 1989).  In the usual case, that factual determination will involve considering both the proponent's evidence and evidence submitted by the fee opponent "challenging the accuracy and reasonableness of the facts asserted by the prevailing party."  *Camacho*, 523 F.3d at 980 (alteration and internal quotation marks omitted).

In this case, the government presented no evidence in opposition to the fee application.  It is clear, however, that the applicant's initial duty of production is not excused by lack of opposition.  *See Foley v. City of Lowell*, 948 F.2d 10, 19–21 (1st Cir. 1991); *Bode v. United States*, 919 F.2d 1044, 1048 (5th Cir. 1990) (per curiam) (explaining that an uncontested fee application failed to meet its initial

burden).   A district court does not "improperly shoulder defendant['s] burden of challenging the fee petition" in finding that the applicant has failed to meet its initial burden of production.  *Zabkowicz v. W. Bend Co.*, 789 F.2d 540, 548 n.8 (7th Cir. 1986); *see Bode*, 919 F.2d at 1048 ("The United States was not required to put on any evidence challenging the reasonableness of the hours expended because the Taxpayers had failed to meet their initial burden of establishing the actual number of attorney hours.").   We thus reject Moser's argument that, by itself, the government's failure to challenge the evidence below mandated an award of the total amount requested in his fee motion.

But, the government's failure to submit evidence is not without serious consequences.   After a court determines that a fee application is supported with the requisite evidence of hours worked and the market legal rate, it must then determine the reasonableness of the fee sought. "When . . . a fee target has failed to offer either countervailing evidence or persuasive argumentation in support of its position, we do not think it is the court's job either to do the target's homework or to take heroic measures aimed at salvaging the target from the predictable consequences of self-indulgent lassitude."  *Foley*, 948 F.2d at 21.   Thus, if the fee target does not dispute the market rate or hours reasonably expended, and poses no other valid legal reason for denying the fee request, the district court's inquiry should end after it determines whether the applicant's fee request is facially reasonable.  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (holding that the district court must "presume . . . reasonable" an uncontested market fee rate supported by sufficient evidence); *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987) (awarding the full requested fee because the plaintiffs appropriately supported

a fee application and the defendant did not contest the claimed rates or hours); *see also Powell v. CIR*, 891 F.2d 1167, 1173–74 (5th Cir. 1990) (explaining that an uncontested rate supported by evidence is prima facie reasonable). The fee target has, through its inaction in the district court, waived any right on appeal to present new evidence to challenge the district court's factual finding of reasonableness; nor can the target challenge the absence of an evidentiary hearing in the district court. *See Blum*, 465 U.S. at 892 n.5.

## IV.

Applying these principles, we turn to the district court's analysis of Moser's fee application. We start from the premise that although a "district court has a great deal of discretion in determining the reasonableness of the fee," *Camacho*, 523 F.3d at 978 (internal quotation marks omitted); *Gates*, 987 F.2d at 1398, it must set forth a "concise but clear explanation of its reasons" to allow for appellate review, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir.) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 295 (2014).

## A.

The first component of the lodestar analysis is the prevailing market rate for the work done. "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks omitted); *see Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013). Moser submitted five declarations from practicing attorneys in support of his $500 per hour fee request. Because the government did not contest the market fee rate supported by these declarations, the district court was required to presume that rate reasonable. *See United Steelworkers of Am.*, 896 F.2d at 407.

The district court nonetheless reduced Moser's fee request, concluding that the declarations covered "all types of litigation work," and were "therefore not a particularly accurate representation of what the going rate is in this market for [civil forfeiture] work." Characterizing the forfeiture proceedings as more criminal than civil in nature, the court noted that criminal defense fees are often lower than complex civil litigation fees. The court also held that the suggested hourly rate was too high because much of the work would have been delegated to lower-billing associates had Barnett not been a solo practitioner. The court then applied "its knowledge of the legal market as well as the evidence" to determine that $300 per hour was reasonable rate, relying in part on a fee award that one of Moser's declarants received nine years earlier.

The district court erred in several respects. It failed to afford Moser's rate a presumption of reasonableness. Moreover, contrary to the district court's statement, the

submitted declarations, three of which came from forfeiture specialists with knowledge of the San Diego market, specifically discussed the going rate in the relevant market. *See Camacho*, 523 F.3d at 980 (noting that "affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate" (alterations omitted)).

This initial error permeated the remainder of the district court's analysis. In finding that forfeiture work resembled criminal defense litigation, and relying on the Criminal Justice Act ("CJA") rate of $125 per hour, the court entirely ignored the hourly rates discussed in the three declarations from forfeiture experts. Moreover, we have rejected the notion that civil forfeiture proceedings are simply criminal prosecutions in a different guise. *See United States v. One 1985 Mercedes*, 917 F.2d 415, 419 (9th Cir. 1990) ("Civil forfeiture actions constitute a hybrid procedure of mixed civil and criminal law elements.").

There is a critical distinction between CJA fees and those received under CAFRA. No matter the result, CJA counsel is always paid, but an attorney undertaking a representation in a forfeiture action under a contingency arrangement will receive no fee at all if his client does not prevail. A forfeiture specialist's customary rates must recognize economic reality, and perforce will be higher than if payment were guaranteed. The district court's analogy to indigent criminal representation thus conflicts with CAFRA's purpose of facilitating adequate legal representation for forfeiture claimants. *See* H.R. Rep. No. 106-192, at 11 (1999) ("[CAFRA] is designed to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means

to recover their property and make themselves whole after wrongful government seizures.").

The district court also found that Barnett's claimed hourly fee should be lowered because much of the work could have been delegated to associates with lower billing rates at a large law firm. But again, this analysis fails to take into account the forfeiture declarations. Two of the declarants specifically stated that they charge $600–650 per hour in solo practice. Nor does the record establish that forfeiture actions are customarily defended by large firms or what rates those firms charge.

The district court also erred by relying on an award almost nine years old in determining the prevailing market hourly rate. We have repeatedly held that the court must base its determination on the *current* market rate. *See Camacho*, 523 F.3d at 981 ("[A] district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bell*, 341 F.3d at 861 ("We hold . . . that it was an abuse of discretion in this case to apply market rates in effect more than two years *before* the work was performed."); *cf. Gonzalez*, 729 F.3d at 1206 ("[N]o Ninth Circuit case law supports the district court's apparent position that it could determine the hourly rates . . . without relying on evidence of prevailing market rates.").

## B.

The district court also reduced the hours claimed by over forty percent. Again, the law governing this analysis is well established. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397. "The district court . . . should exclude from this initial fee calculation

hours that were not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (internal quotation marks omitted). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.*

The district court can reduce the hours in an attorney's fee application through one of two methods. "First, the court may conduct an hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party." *Gonzalez*, 729 F.3d at 1203 (internal quotation marks omitted). Second, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates*, 987 F.2d at 1399 (internal quotation marks omitted).

The district court purported to use the hour-by-hour approach, eliminating 41.55 hours because it believed that Barnett spent more time on the case than was needed. But the court only identified 6.75 hours that it found objectionable. A court errs when its "stated reasons for deducting these figures do not correspond to the amount of time deducted." *McGrath*, 67 F.3d at 254; *see D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1386 (9th Cir. 1990) ("Even if we subtract all of the hours mentioned by the district court . . . we are left with an hourly figure significantly higher than the number of hours calculated by the court."), *overruled on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). "[D]istrict

courts must show their work when calculating attorney's fees." *Padgett v. Loventhal*, 706 F.3d 1205, 1208 (9th Cir. 2013).[2]

## C.

The district court also erred by reducing the lodestar because of the contingency fee. There is "a strong presumption that the lodestar represents the reasonable fee." *City of Burlington*, 505 U.S. at 562 (internal quotation marks omitted); *see also Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar figure be adjusted on the basis of other considerations."). It is error to reduce fees based on factors that are subsumed in the lodestar calculation. *See Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). We have specifically held that the existence of a contingent fee is such a subsumed factor.

---

[2] The district court also reduced the hours claimed because "Barnett gave the government's litigation work more respect than it deserved." Although we "accord considerable deference" to district court determinations regarding redundant or excessive hours, *see Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000), the explanation here not only fails to identify the government litigation work that the district court felt was over-respected, but conflicts in general with CAFRA's purpose of leveling the playing field. When the government takes unsupported positions, an applicant is not unreasonable in responding forcefully. There is no indication that anything but Barnett's professional judgment guided his approach to the litigation. A CAFRA claimant should not be concerned that his attorney is advocating less than zealously out of fear that the district court will take a different view of what the case required and reduce any fee award accordingly.

*See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), *as amended*, 108 F.3d 981 (1997). Although a contingent fee agreement may be relevant in determining the reasonable hourly rate or hours expended, *see $186,416.00 in U.S. Currency*, 642 F.3d at 755, a court "may not rely on a contingency agreement to increase or decrease" the lodestar, *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000).

**V.**

For the reasons stated above, we **VACATE** the fee award and **REMAND** for a recalculation consistent with this opinion. The parties will bear their respective costs on appeal.

REINHARDT, Circuit Judge, concurring:

I concur in the opinion, but write separately to emphasize that under our holding the district court's role in reviewing unopposed fee requests is a modest one. We conclude that the district court cannot "do the target's homework" and must presume that a fee request supported by sufficient evidence is reasonable, but we do not discuss in detail when this presumption would be rebutted. To understand the appropriate bounds for the district court's review, we must examine the purpose of investing the court with that authority in the first place. When the fee-target implicitly agrees that the applicant's evidence establishes that his fees were reasonable by not contesting the issue, the district court should act not to save the target from itself, but only to protect the integrity of the courts. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1073 (9th Cir. 2012) (In a case in which a party might otherwise have forfeited an argument, a court may still intervene to

"safeguard the fairness, integrity and reputation of our courts."); *Colson v. Hilton Hotels Corp.*, 59 F.R.D. 324, 328 (N.D. Ill. 1972) ("In ruling on attorney's fees the Court ought to consider . . . the effect of the allowance on the public interest and the reputation of the courts."). Below I give a few examples of where a court might reject even an unopposed fee request because approving it damages the court itself. While this is not a comprehensive list, it illustrates that these rejections will be relatively rare.

The district court's review of an unopposed fee request will be least necessary or desirable when the target is a sophisticated private entity. In a suit between Google and Apple, for example, it is highly unlikely that a court would find it necessary to intervene where the target corporation does not itself offer an objection. Still, a district court may reject an unopposed fee request that is patently unreasonable or unconscionable—regardless of the identity of the parties—if participating in an unreasonably arbitrary award would adversely affect the reputation of the court. If, on the other hand, the fee target is pro se or otherwise unsophisticated, the court's intervention is clearly more justified. In those cases, the court may sometimes be required to serve as a "guarantor of fairness." *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 20 (1st Cir. 1991) (internal quotation omitted). In such cases, the court still gives the applicant significantly more leeway than in a contested fee motion, because it intervenes in uncontested fee requests in order to prevent evident unfairness or to preserve the integrity of the judicial system.

The district court may also exercise its limited authority to ensure fairness in cases like this one, in which the fee will be paid out of the public fisc. This is not because governmental entities are unsophisticated litigants— generally quite the opposite is true—but because the court

has a separate interest in preserving society's confidence that public funding of litigation is implemented wisely. Indeed, *Foley*, which we lean on heavily in the opinion of the court, explicitly recognized that the courts should be somewhat more active in reviewing unopposed fee requests drawing on government funds than in other cases. *Id.* at 19.

Although there is a substantial argument that our prior cases require the award of unopposed fee requests that are supported by sufficient evidence, I believe the narrow authority we reserve to protect the integrity of the courts and the public fisc is appropriate, if exercised reasonably. In the case before us, while the district court clearly exceeded that authority in a number of respects, two errors are particularly egregious and require discussion beyond that provided in the court's opinion.

First, the district court reduced the rate the claimant could recover because his attorney Richard Barnett, as a solo practitioner, could not delegate simpler tasks to lower billing employees, as would a large corporate firm. Beyond ignoring that two of the declarants were solo practitioners who swore that they charged more than Barnett, the district court's analysis is in error, because a solo practitioner's hourly rates will generally already reflect the fact that he does both high and low level work. As a rule then, his rates will be lower than those of a senior partner at a large firm. Without evidence that a particular case is an exception to this rule, reducing a solo practitioner's award because he could not delegate work to lower billing employees makes little sense and unfairly penalizes solo practitioners and, potentially, even members of small firms.

Second, the district court refused to accept Barnett's hours as reasonable in part because he gave the

government's arguments "more respect than [they] deserved." Moser should not be held responsible for the government's "obstinate" refusal to settle the case, nor for his attorney's unwillingness to run the risk that the court would give the government's arguments the same kind of "respect" to which the government evidently thought they were entitled. One does not need to be an ardent legal realist to understand that frequently an argument that one judge thinks is a clear loser, another may believe to be dispositive in the other direction. Properly advocating for one's client means being prepared to encounter either kind of judge.