**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENNIS BALLEN; NICE TIE INC., a
Washington corporation dba
Blazing Bagels,
          *Plaintiffs-Appellees,*

       v.

CITY OF REDMOND, a municipal
corporation; CITY OF REDMOND
PLANNING AND COMMUNITY
DEVELOPMENT DEPARTMENT;
ROBERTA LEWANDOWSKI, in her
official capacity as Planning
Director of the City of Redmond
Dept of Planning and Community
Development,
          *Defendants-Appellants.*

No. 04-35606

D.C. No.
CV-03-02580-MJP

DENNIS BALLEN; NICE TIE INC., a
Washington corporation dba
Blazing Bagels,
                    *Plaintiffs-Appellees,*

              v.

CITY OF REDMOND, a municipal
corporation; CITY OF REDMOND
PLANNING AND COMMUNITY
DEVELOPMENT DEPARTMENT;
ROBERTA LEWANDOWSKI, in her
official capacity as Planning
Director of the City of Redmond
Dept of Planning and Community
Development,
                    *Defendants-Appellants.*

No. 04-35758

D.C. No.
CV-03-02580-MJP

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
June 6, 2006—Seattle, Washington

Filed September 15, 2006
Amended October 20, 2006

Before: Richard C. Tallman and Jay S. Bybee,
Circuit Judges, and Marilyn L. Huff,* District Judge.

Opinion by Judge Tallman

*The Honorable Marilyn L. Huff, United States District Judge for the
Southern District of California, sitting by designation.

**COUNSEL**

J. Zachary Lell, Seattle, Washington, for the defendants-appellants.

Steven M. Simpson, Arlington, Virginia, for the plaintiffs-appellees.

**ORDER**

The Opinion filed on September 15, 2006, is amended as follows:

At slip opinion page 11445, first paragraph, line 1: delete the first paragraph and replace with the following text, retaining footnote 1 at the end of the new text:

> "Ballen subsequently moved for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Over the City's opposition to the fee total requested by Ballen, the district court granted Ballen's Motion in full and awarded fees and costs in the amount of $165,508. Another timely appeal followed."

On slip opinion page 11445, heading III: delete the two paragraphs of text under heading III and replace with the following text:

## "III

On December 6, 2005, in response to the district court's summary judgment invalidating the Redmond ordinance the City defends on appeal, the City passed a new sign ordinance that rescinded the ban that was the basis of Ballen's Complaint. However, the City has steadfastly threatened to re-enact the old ordinance if it receives a favorable outcome on this appeal. The City conceded in its notice to us and at oral argument that its new ordinance was adopted only as an interim regulation in response to the district court's summary judgment ruling. Because the new ordinance was intended to be only temporary pending the outcome of the litigation, this case is not moot. *See Jacobus v. Alaska*, 338 F.3d 1095, 1102-04 (9th Cir. 2003) (citing *Smith v. Univ. of Wash.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (indicating that mootness is less appropriate when repeal occurred due to the "prodding effect" of litigation); *Coral Constr. Co. v. King County*, 941 F.2d 910, 927 (9th Cir. 1991) (noting that likelihood of reenactment is a significant factor in the evaluation of mootness)); *see also Carreras v. City of Anaheim*, 768 F.2d 1039, 1047 (9th Cir. 1985) ("[R]epeal of the objectionable language [does] not deprive the federal courts of jurisdiction to decide the constitutional question because of the well-settled principle that a defendant's voluntary cessation of a challenged prac-

tice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)). The case is not moot for that reason."

---

**OPINION**

TALLMAN, Circuit Judge:

This First Amendment commercial speech case arises from a dispute between Blazing Bagels' use of outdoor advertising and the City of Redmond's commercial signage ordinance. The City of Redmond, Washington, and its Department of Planning and Community Development (collectively "Defendants" or "the City" or "Redmond") appeal the district court's orders granting Plaintiff Dennis Ballen summary judgment and attorneys' fees. Appellees Ballen and his business, Nice Tie, Inc., d/b/a Blazing Bagels (collectively "Ballen" or "Plaintiffs"), challenge the City's sign ordinance ("Ordinance"), REDMOND COMMUNITY DEVELOPMENT GUIDE ("RCDG") 20D.160.10-090, prohibiting all portable signs, with ten exceptions, *see* RCDG 20D.160.10-060, arguing, *inter alia*, that the Ordinance does not directly advance the government's interest and, in the alternative, reaches further than necessary to accomplish the government's interest. We must decide whether the Ordinance prohibiting the use of portable signs is a permissible restriction on commercial speech. The district court ruled the City's Ordinance invalid and we affirm. We also uphold the fee award.

**I**

On June 17, 1997, to promote the City's dual goals of traffic safety and community aesthetics, *see* RCDG 20D.160.10-010, the City Council passed the Ordinance banning the display of most portable and offsite signs. RCDG 20D.160.10-090. The challenged provision of the Ordinance reads:

> Portable Signs. All portable signs except real estate signs and other portable signs specifically allowed by RCDG 20D.160.10-060, Signs and Street Graphics, are prohibited. This prohibition includes, but is not limited to, portable readerboards, signs on trailers, sandwich boards, except as allowed by RCDG 20D.160.10-060(10), Signs and Street Graphics: Temporary Uses, and sidewalk signs.

RCDG 20D.160.10-090.

Ten categories of signage are exempt from this general prohibition: (1) banners on the Redmond Way railroad overpass, (2) construction signs, (3) celebration displays, (4) banner displays in the city center neighborhood, (5) major land use action notices, (6) political signs, (7) real estate signs, (8) temporary window signs, (9) signs on kiosks, and (10) temporary uses and secondary uses of schools, churches, or community buildings. RCDG 20D.160.10-060.

On most weekday mornings from mid-November 2002 through January 2003, and again from mid-April 2003 to mid-June 2003, Ballen, owner of Blazing Bagels, hired an employee to stand on the sidewalk wearing a sign that read: "Fresh Bagels - Now Open." The employee directed the attention of passing motorists to Ballen's business premises and informed passing motorists of Ballen's available retail products.

But the City did not like the taste of Blazing Bagels' advertisement. On June 18, 2003, the City transmitted a letter to Ballen notifying him that he was in violation of the law and warning him that continued noncompliance would result in the initiation of code enforcement proceedings. The letter ordered Ballen to cease and desist using a portable sign to advertise his business.

Instead of baking up a more palatable method of advertising, Ballen produced a Complaint filed in the King County

Superior Court on July 22, 2003, under 42 U.S.C. § 1983 and Washington's Uniform Declaratory Judgments Act. The City removed the case to the United States District Court for the Western District of Washington.

On April 20, 2004, the parties submitted Cross-Motions for Summary Judgment. On June 15, 2004, the district court entered a final Order and Judgment Granting Plaintiffs' Motion and Denying the City's Motion. This timely appeal followed.

Ballen subsequently moved for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Over the City's opposition to the fee total requested by Ballen, the district court granted Ballen's Motion in full and awarded fees and costs in the amount of $165,508. Another timely appeal followed.[1]

## II

A grant of summary judgment is reviewed de novo. *Sierra Club v. Babbitt*, 65 F.3d 1502, 1507 (9th Cir. 1995). We must "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied substantive law." *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). All reasonable inferences supported by the evidence must be drawn in the nonmoving party's favor. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Both parties agree that this case should be decided as a matter of law on summary judgment as there are no genuine issues of material fact in dispute.

## III

[1] On December 6, 2005, in response to the district court's summary judgment invalidating the Redmond ordinance the

---

[1]The two appeals have been consolidated in this case.

City defends on appeal, the City passed a new sign ordinance that rescinded the ban that was the basis of Ballen's Complaint. However, the City has steadfastly threatened to re-enact the old ordinance if it receives a favorable outcome on this appeal. The City conceded in its notice to us and at oral argument that its new ordinance was adopted only as an interim regulation in response to the district court's summary judgment ruling. Because the new ordinance was intended to be only temporary pending the outcome of the litigation, this case is not moot. *See Jacobus v. Alaska*, 338 F.3d 1095, 1102-04 (9th Cir. 2003) (citing *Smith v. Univ. of Wash.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (indicating that mootness is less appropriate when repeal occurred due to the "prodding effect" of litigation); *Coral Constr. Co. v. King County*, 941 F.2d 910, 927 (9th Cir. 1991) (noting that likelihood of reenactment is a significant factor in the evaluation of mootness)); *see also Carreras v. City of Anaheim*, 768 F.2d 1039, 1047 (9th Cir. 1985) ("[R]epeal of the objectionable language [does] not deprive the federal courts of jurisdiction to decide the constitutional question because of the well-settled principle that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)). The case is not moot for that reason.

## IV

**[2]** Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience," or as "speech proposing a commercial transaction." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561-62 (1980). Both parties correctly concede that Ballen's advertising sign satisfies this definition and thus contains pure commercial speech.

**[3]** Commercial speech enjoys a limited degree of First Amendment protection. *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1142 (9th Cir. 1998). In *Central Hudson*, the

Supreme Court established a four-part test for reviewing governmental restrictions on commercial speech. Specifically, the validity of a restriction on commercial speech depends on the following factors: (1) "whether the expression is protected by the First Amendment," which requires the speech to "concern lawful activity and not be misleading"; (2) "whether the asserted governmental interest is substantial"; (3) "whether the regulation directly advances the governmental interest asserted"; and (4) "whether [the regulation] is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566.

[4] Everyone agrees that the first two prongs are satisfied in this case since the message conveyed by Ballen's advertising sign concerns lawful activity and is not misleading, and that the Ordinance's dual goals of promoting vehicular and pedestrian safety and preserving community aesthetics are substantial governmental interests. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."). The constitutionality of Redmond's Ordinance, therefore, turns on applying the third and fourth prongs of the *Central Hudson* test.

### A

The third prong of the *Central Hudson* test is "whether the regulation directly advances the governmental interest asserted." *Central Hudson*, 447 U.S. at 566. Because we think it is clear that the Ordinance fails to satisfy *Central Hudson*'s fourth prong, we do not reach the issue of whether the Ordinance satisfies *Central Hudson*'s third prong.

### B

[5] The fourth prong of the *Central Hudson* test is "whether [the regulation] is not more extensive than is necessary to

serve that [governmental] interest." *Central Hudson*, 447 U.S. at 566. This requires that there be a reasonable fit between the restriction and the goal, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993), and that the challenged regulation include "a means narrowly tailored to achieve the desired objective." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). "A regulation need not be absolutely the least severe that will achieve the desired end, but if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the fit between ends and means is reasonable." *Discovery Network*, 507 U.S. at 417 n.13 (internal quotation marks and citation omitted). The City has the burden of proving that the Ordinance is narrowly tailored. *Id.* at 416.

In *Discovery Network*, the City of Cincinnati prohibited distribution of commercial handbills displayed in news racks on public property but permitted noncommercial handbills displayed in news racks. *Id.* at 413 & nn.2-3. Cincinnati asserted that its ordinance was necessary to reduce the number of news racks in the city, which advanced its interests in safety and aesthetics. *Id.* at 418. Although the Court accepted Cincinnati's position that reducing the number of news racks increased safety and community aesthetics, the Court ruled that the ordinance failed to satisfy *Central Hudson*'s fourth prong because the prohibited news racks were no more harmful than the permissible news racks. *Id.* at 424-25. As a result, Cincinnati's categorical ban on commercial news racks and its allowance of noncommercial news racks created a distinction that had "no relationship *whatsoever* to the particular interests that the city has asserted." *Id.* at 424. In addition, Cincinnati's adoption of a content-based ban rather than a valid time, place, or manner restriction indicated that the city had "not carefully calculated the costs and benefits associated with the burden on speech imposed by its prohibition." *Id.* at 417, 428-30 (internal quotation marks omitted).

**[6]** Here, the governmental interests served by the Ordinance include promoting vehicular and pedestrian safety and preserving community aesthetics. The exceptions to the City's portable sign Ordinance are all content based. Different signs are treated differently under the Ordinance based entirely on a sign's content. The City has failed to show how the exempted signs reduce vehicular and pedestrian safety or besmirch community aesthetics any less than the prohibited signs. As in *Discovery Network*, the City's use of a content-based ban rather than a valid time, place, or manner restriction indicates that the City has not carefully calculated the costs and benefits associated with the burden on speech imposed by its discriminatory, content-based prohibition.

**[7]** While some of the Ordinance's content-based exceptions are reasonable—political signs are subject to strict scrutiny, construction signs promote traffic and pedestrian safety, banner displays may enhance community aesthetics—others compromise the City's interests. More specifically, ubiquitous real estate signs, which can turn an inviting sidewalk into an obstacle course challenging even the most dextrous hurdler, are an even greater threat to vehicular and pedestrian safety and community aesthetics than the presence of a single employee holding an innocuous sign that reads: "Fresh Bagels - Now Open." *Cf. Linmark Assocs., Inc. v. Willingboro*, 431 U.S. 85 (1977) (holding that a municipal ordinance prohibiting *onsite* "For Sale" and "Sold" signs is an invalid restriction on commercial speech). Here, the City has protected outdoor signage displayed by the powerful real estate industry from an Ordinance that unfairly restricts the First Amendment rights of, among others, a lone bagel shop owner. Additionally, temporary window signs and signs on kiosks are no less a threat to vehicular and pedestrian safety and community aesthetics than the ambulant bagel advertisement.

**[8]** The availability of narrower alternatives that intrude less on First Amendment rights is a factor to consider in determining whether the Ordinance satisfies *Central Hud-*

*son*'s fourth prong. *Discovery Network*, 507 U.S. at 417 n.13. In *Discovery Network*, the Court held that a city ordinance prohibiting the distribution of commercial handbills displayed in news racks on public property failed to satisfy *Central Hudson*'s fourth prong because news racks, whether commercial or noncommercial, were equally unattractive, and discrimination against the small number of commercial news racks was untenable when other alternatives (e.g., simply limiting the total number of news racks) were available. *Id.* at 425-26. In *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), the Court held that the Federal Alcohol Administration Act's ("FAAA") restriction prohibiting beer labels from displaying alcohol content failed to satisfy *Central Hudson*'s fourth prong because the existence of alternative ways to prevent strength wars among brewers, such as "directly limiting the alcohol content of beers" or "prohibiting marketing efforts emphasizing high alcohol strength," indicated that the FAAA's ban was more extensive than necessary. *Id.* at 478, 490-91.

**[9]** Here, less restrictive alternatives exist that could have been used to advance the City's interests. The City could impose time, place, and manner restrictions on all commercial signs. Likewise, if the City found that signs with live people holding them are more distracting and therefore more hazardous than a silent sandwich board, it could ban such signs altogether.

*Metromedia* does not control this case. In *Metromedia*, the Court held that a City of San Diego ordinance that prohibits outdoor, offsite commercial billboards is a valid restriction of commercial speech. 453 U.S. at 493 & n.1, 512. The Supreme Court concluded that the ordinance directly advanced the city's interests in promoting traffic safety and preserving community aesthetics and was narrowly tailored, and therefore survived *Central Hudson*'s four-part test. *See id.* at 510-12.

Although the temptation to apply *Metromedia* as controlling precedent is strong at first glance, further analysis reveals its applicability here to be misplaced. The Court in *Metromedia* cautioned that "[e]ach method of communicating ideas is a law unto itself and that law must reflect the differing natures, values, abuses and dangers of each method." *Id.* at 501 (internal quotation marks omitted). The Court then went on to qualify that "[w]e deal here with the law of billboards." *Id.* This distinction is significant because billboards are fixed, permanent structures that are more intrusive to community aesthetics than portable sandwich boards. The externalities of billboards include perdurable visual pollution that pervades a substantial volume of our eyesight and grows into an unignorable part of our cultural landscape. Portable signs can be removed at the close of business and standing advertisers can take a seat when their feet are tired.

**[10]** Moreover, the ordinance upheld in *Metromedia* banned *all* offsite commercial advertising, *id.* at 503, whereas the Ordinance in this case exempted several categories of commercial advertising. In *Metromedia* the distinction that was challenged and upheld was between onsite and offsite billboards. It was a content-neutral distinction. The categorical nature of the ordinance in *Metromedia* precludes its application here. Instead, the inconsistent content-based nature with which the Redmond Ordinance distinguishes its interests and the availability of less restrictive alternatives to achieve the City's goals are fatal under *Central Hudson*'s fourth prong.

**[11]** Thus, the Ordinance is not a reasonable fit between the restriction and the goal, and the Ordinance therefore fails *Central Hudson*'s fourth prong.

## V

The City argues that the district court erred by excluding two statements from Redmond Code Enforcement Officer

Deborah Farris ("Farris"). Evidentiary rulings made in the context of summary judgment motions are reviewed for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). The district court's ruling can only be reversed if it was both "manifestly erroneous and prejudicial." *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

[12] A trial court may only consider admissible evidence in ruling on a motion for summary judgment. *Id.* Under Washington law, statements of ultimate facts, conclusions of fact, and conclusory statements of fact are insufficient for summary judgment purposes. *See Grimwood v. Univ. of Puget Sound, Inc.*, 753 P.2d 517, 519 (Wash. 1988). Indeed, the Washington Supreme Court has explained that "the emphasis is upon *facts* to which the affiant could testify from personal knowledge and which would be *admissible in evidence*." *Id.* Here, the declarant states:

> 4.   The City's ban on most portable and temporary signs . . . significantly and materially advances the City's interest in traffic safety and community aesthetics. The aggregate number of portable and temporary signs displayed within the City's jurisdiction has severely decreased as a result of this prohibition.
>
> 5.   The list of exemptions . . . has not materially detracted from or otherwise undermined the effectiveness of the City's general prohibition on portable signs. In my professional judgment, experience and observation, the signs subject to the City's ban represent both a significant amount and percentage — if not an outright majority — of the total portable signage that would otherwise exist in the Redmond community absent the prohibition.

There is no foundation of objective facts laid in these assertions to support the legal conclusions offered and the district

court properly excluded these statements upon objection by Ballen.

Moreover, excluding Officer Farris's statements was not prejudicial to the City since the statements do not cure, or even address, the deficiencies of the Ordinance with respect to *Central Hudson*'s fourth prong. Thus, the district court did not abuse its discretion when it excluded Farris's unsupported legal conclusions.

## VI

**[13]** The City argues that if the ban is unconstitutional because of the numerous exemptions, then the exemptions should be severed from the general ban on portable signs. But severing the Ordinance would subject activity that is currently authorized by the legislature to civil and criminal sanctions, would impermissibly restrict speech that is protected by a strict level of scrutiny, i.e., political speech, and would make those protected by the exemptions—realtors, politicians, etc.—indispensible parties to this proceeding. Thus, the district court properly refused to sever the allegedly unconstitutional portion of the Ordinance from the rest of it.

## VII

The City challenges the district court's award of attorneys' fees. An award of attorneys' fees under 42 U.S.C. § 1988 is reviewed for an abuse of discretion. *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003). "An abuse of discretion occurs if the district court bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (internal quotation marks omitted).

**[14]** "In any action or proceeding to enforce a provision of section[ ] . . . 1983[,] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a rea-

sonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988. "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks and citations omitted). Ballen is the prevailing party and is entitled to an award of attorneys' fees from the City pursuant to § 1988, and there are no special circumstances in this case that would render an award of attorneys' fees unjust. Thus, the district court properly awarded attorneys' fees to Ballen.

**[15]** Alternatively, the City argues that the district court's award of attorneys' fees was excessive. In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees under § 1988 is the "lodestar" method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The lodestar method multiplies the number of hours "the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). After making that computation, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors. *Id.* at 252 & n.4; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). The twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the

nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 252 n.4 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

**[16]** Here, $165,508, which the district court awarded, was the lodestar figure. The City argues that the lodestar figure should be reduced because "(1) the short duration of the lower court proceedings, (2) the minimal formal discovery necessitated by the case, [and] (3) the fact [that] the parties appeared jointly in court only once," are compelling evidence that the hours claimed by Ballen's counsel were "excessive" and thus "significantly inflated" the calculation. The City uses its own hours to support its claim, arguing that "the significantly fewer hours expended by the City's counsel in defending this action" support the position that Ballen's counsel overworked the case. We have previously said that only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees. *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988); *see also Cunningham*, 879 F.2d at 484. District courts possess the necessary discretion to adjust the amounts awarded to address excessive and unnecessary effort expended in a manner not justified by the case.

**[17]** The district court's attorneys' fee award was not excessive and there was no abuse of discretion in awarding the fees requested.

## VIII

Redmond's Ordinance fails to satisfy *Central Hudson*'s four-part test. The Ordinance impermissibly discriminates against the commercial speech rights of businesses within the City in a content-based manner more extensive than necessary to serve Redmond's legitimate governmental interests. The

district court's summary judgment and grant of attorneys' fees in favor of Ballen are AFFIRMED.