**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARTIN GONZALEZ, SR.; MARTIN
GONZALEZ, JR.; JOSE GONZALEZ;
MARTHA HERNANDEZ; KRYSTAL
HERNANDEZ; MONIQUE PANIAGUA;
JOSE QUINONES; JESSE CASTRO; JOSE
MOLINA; VANESSA GARCIA;
SHANNON BOARD; MANUEL
HERRERA; HUMBERTO HERRERA;
GERARDINA HERRERA; FREDDIE
BARAJAS; MARVIN TEJEDA; JESUS
JIMENEZ; EDER JIMENEZ; JORDAN
PAYAN; PABLO CAMARILLO,
       *Plaintiffs-Appellants*,

v.

CITY OF MAYWOOD; MAYWOOD-
CUDAHY POLICE DEPARTMENT;
BRUCE LEFLAR; PAUL PINE;
CUNNINGHAM, Officer; FLOREZ,
Officer; WEST, Officer; VISCARRA,
Officer,
       *Defendants-Appellees*.

No. 11-56594

D.C. No.
2:07-cv-03469-
ODW-SH

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
June 4, 2013—Pasadena, California

Filed September 9, 2013

Before: Ronald M. Gould and N. Randy Smith, Circuit
Judges, and Sharon L. Gleason, District Judge.[*]

Opinion by N.R. Smith

## SUMMARY[**]

### Civil Rights/Attorneys' Fees

The panel vacated the district court's attorneys' fee award, entered pursuant to 42 U.S.C. § 1988, and remanded for a re-computation of the fee arising from the settlement of numerous civil rights lawsuits against the City of Maywood, its police department, and several local government officials.

The panel held that the district court abused its discretion by: (1) erroneously applying across-the-board cuts to the lodestar; (2) failing to find a reasonable hourly rate on which to compute the lodestar; (3) declining to award a state-law multiplier; and (4) declining to award fees for work performed on the fee application.

---

[*] The Honorable Sharon L. Gleason, District Judge for the U.S. District Court for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel stated that in determining a reasonable fee award, the district court failed to apply the following principles: (1) that a court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community; (2) that when a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply; and (3) it is not per se unreasonable for the prevailing party in a civil rights case to be awarded an amount of attorneys' fees that exceeds the amount of money recovered by his or her client. Although the panel remanded for a re-determination of the fee award, it denied plaintiffs' request to re-assign this case to a different district judge.

**COUNSEL**

Paul L. Hoffman (argued) and Catherine Sweetser, Schonbrun, DeSimone, Seplow, Harris, Hoffman & Harrison, LLP, Venice, California; Cynthia Anderson-Barker, Law Office of Cynthia Anderson-Barker, Los Angeles, California; Robert Mann and Donald W. Cook, Attorneys at Law, Los Angeles, California; Ellen Hammill Ellison, Law Office of Ellen Hammill Ellison, Los Angeles, California; Olu K. Orange, Orange Law Offices, Los Angeles, California, for Plaintiffs-Appellants.

Richard A. Semon (argued) and Lee A. Wood, The Aguilera Law Group, APLC, Costa Mesa, California, for Defendants-Appellees City of Maywood, et al.

Brian P. Keighron (argued), Wisotsky, Procter & Shyer, Oxnard, California, for Defendants-Appellees Cunningham and Muriello.

## OPINION

N.R. SMITH, Circuit Judge:

42 U.S.C. § 1988 authorizes district courts to award the prevailing party in civil rights litigation a "reasonable attorney's fee." Several important principles bear on the district court's determination of a reasonable fee amount. First, the court must compute the fee award using an hourly rate that is based on the "prevailing market rates in the relevant community." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). Second, when a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Finally, it is not per se unreasonable for the prevailing party in a civil rights case to be awarded an amount of attorney's fees that exceeds the amount of money recovered by his or her client. Because the district court did not apply these principles when determining the amount of Plaintiffs' attorney's fee award, we must vacate and remand.

## BACKGROUND

The dispute over attorney's fees in this appeal arises from the settlement of numerous civil rights lawsuits against the City of Maywood, its police department, and several local

government officials (collectively, the "City"). On August 19, 2010, following a successful mediation of eight such lawsuits, the parties entered into a Stipulation for Settlement (the "Stipulation").[1] Under the terms of the Stipulation, Plaintiffs would receive $500,000 total. The Stipulation also provided that Plaintiffs could apply to the district court for attorney's fees. However, the Stipulation limited any fee award to $1,000,000 for work on the merits, and $25,000 for work on the fee application.

On November 12, 2010, Plaintiffs filed a fee application in the district court for the Central District of California. Plaintiffs' initial application computed their lodestar amount as $1,455,339 for work both on the merits and on the fee application. Because this amount exceeded the amount the Stipulation authorized, Plaintiffs requested a fee of $1,025,000. The City filed an opposition to Plaintiffs' fee application on December 6, 2010.

The City's opposition identified a mathematical error in Plaintiffs' computation of their lodestar. An inadvertently placed decimal point in the sub-total for attorney Anderson-Barker's fee produced a lodestar amount that was nearly $500,000 less than it should have been. Plaintiffs filed a

---

[1] The facts of the litigation underlying this appeal are largely irrelevant to the legal issues we must address. In short, on May 29, 2007, twenty-two Plaintiffs filed a joint lawsuit against the City, alleging numerous violations of their civil rights under federal and state law. Plaintiffs based their claims on nine separate incidents of misconduct involving City police officers. Subsequently, the district court severed the case into nine separate cases, grouping Plaintiffs' claims by each alleged violation. The nine cases then proceeded separately. One case was dismissed on January 22, 2010, and the remaining eight were resolved by the Stipulation.

supplemental declaration acknowledging this error one day after the City filed its opposition.

Later, Plaintiffs identified a second error in their initial lodestar computation. In a declaration filed along with their reply to the City's opposition to the motion for attorney's fees, Plaintiffs indicated that the arithmetic function in their word processing software had miscalculated the total number of hours attorney Ellison had worked on the case. Thus, although Plaintiffs' motion for attorney's fees claimed Ellison had worked 411.54 hours, correcting the computation error showed that she had actually worked 636.7 hours.

After correcting the errors in Ellison's and Anderson-Barker's billings, Plaintiffs computed their lodestar to be $2,059,451.50. Nevertheless, this adjustment did not affect Plaintiffs' ultimate contention that they were entitled to receive $1,025,000 in fees—the maximum amount permitted by the Stipulation.

On January 24, 2011, the district court held a hearing on the attorney's fee award. At the hearing, the district court indicated that it would not award fees in excess of the $500,000 that Plaintiffs had recovered:

> This is offensive on its face. I have got a summary here of the various, we will call it indignities suffered by each of the plaintiffs and what their settlements have been, and then I look at the attorney's fees request and it literally shocks the conscience.
>
> Let me cut to the chase. If it were flipped, if what is being divided up among the

plaintiffs is what the attorneys are asking for in compensation, fine. I would approve that. And then the attorneys get what you have given to your clients, that would get approved.

Now, I understand that you have already convinced each of these plaintiffs to go along with whatever, and that is fine. They are free to contract as they wish. They are free to resolve and compromise their claims on any terms they want, but to the extent that you come in here seeking approval of these attorney's fees, that is not going to happen. All right. . . .

I have said what I have got to say on this issue. And I felt this all along, if the numbers were flipped, if the injured plaintiffs had received the lion's share of this money, fine, I would have no problem. But I will not approve this. We are done.

Consistent with this position, the district court partially granted Plaintiffs' motion for attorney's fees in a twenty-five page order on August 22, 2011, and awarded $473,138.24 in fees. Plaintiffs timely appealed on September 13, 2011.

## STANDARD OF REVIEW

"District court awards of attorney's fees under section 1988 are reviewed for abuse of discretion." *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir. 1991). Accordingly, "[w]e review the district court's calculation of the reasonable hours and the hourly rate for abuse of discretion." *Costa v. Comm'r*

*of Soc. Security Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) (internal quotation marks omitted).  Under this standard of review, we "affirm unless the district court applied the wrong legal standard or its findings were illogical, implausible or without support in the record."  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

42 U.S.C. § 1988(b) authorizes district courts to award the "prevailing party," in any suit under 42 U.S.C. § 1983, a "reasonable attorney's fee."  The City does not dispute that the Plaintiffs in this case were prevailing parties for purposes of § 1988.  *See Carbonell v. INS*, 429 F.3d 894, 899 (9th Cir. 2005) ("[W]e have also found that a litigant prevailed when he entered into a legally enforceable settlement agreement.").

Plaintiffs contend that the district court erred in determining the fee award by (1) erroneously applying across-the-board cuts to the lodestar, (2) failing to find a reasonable hourly rate on which to compute the lodestar, (3) declining to award a state-law multiplier, and (4) declining to award fees for work performed on the fee application.  We agree that the district court erred in these four respects and therefore vacate the fee award and remand.

To determine the amount of a reasonable fee under § 1988, district courts typically proceed in two steps.  First, courts generally "apply . . .  the 'lodestar' method to determine what constitutes a reasonable attorney's fee." *Costa*, 690 F.3d at 1135; *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  Second, "[t]he district court may then adjust [the lodestar] upward or downward

based on a variety of factors." *Moreno*, 534 F.3d at 1111. We address these steps in sequence.

## I.  Computation of the Lodestar

Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ballen*, 466 F.3d at 746 (internal quotation marks omitted); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988. *See Ballen*, 466 F.3d at 746. We address the district court's analysis of the number of hours and hourly rates in turn.

### A.  Reasonable Number of Hours

A district court, using the lodestar method to determine the amount of attorney's fees to award, must determine a reasonable number of hours for which the prevailing party should be compensated. *See, e.g.*, *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Ultimately, a "reasonable" number of hours equals "[t]he number of hours . . . [which] could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111. The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994). Thus, to determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted. Although opposing counsel's billing records may be relevant to determining whether the prevailing party spent a

reasonable number of hours on the case, those records are not dispositive. *See Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (noting that opposing counsel's billing records are "useful" in determining the amount of a reasonable fee). Therefore, the district court has the discretion not to rely on them. *See Ferland*, 244 F.3d at 1151.

Of course, in some cases, the prevailing party may submit billing records which include hours that could not reasonably be billed to a private client and, therefore, are not properly included in a § 1988 fee award. For example, records may contain entries for hours that are "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008) (internal quotation marks omitted). Because a reasonable attorney's fee would not include compensation for such hours, the district court should exclude them using one of two methods. First, the court may conduct an "hour-by-hour analysis of the fee request," and exclude those hours for which it would be unreasonable to compensate the prevailing party. *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). Second, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.* (internal quotation marks omitted). Due to the associative property of multiplication,[2] it makes no difference in terms of the final amount to be awarded whether the district court applies the percentage cut to the number of hours claimed, or to the lodestar figure.

---

[2] The associative property of multiplication can be expressed as $(A * B) * C = A * (B * C)$.

In this case, Plaintiffs do not dispute that they submitted a "massive fee application." *See id*.  After reviewing that application, the district court determined that Plaintiffs sought compensation for hours spent on numerous tasks that could not "reasonably have been billed to a private client." *See Moreno*, 534 F.3d at 1111.  However, due to the voluminous billing records, the district court did not engage in a "hour-by-hour analysis of the fee request" to eliminate such hours. *See Gates*, 987 F.2d at 1399.  Instead, the court first computed a lodestar figure based on all the hours for which Plaintiffs sought compensation.  Then, the district court applied across-the-board percentage cuts to that lodestar figure to arrive at its fee award. *Gates* permits a district court to follow this general methodology. *See id*.

However, when a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must "set forth a concise but clear explanation of its reasons for choosing a given percentage reduction." *Id.* at 1400. (internal quotation marks omitted).  We have recognized one exception to this rule:  "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno*, 534 F.3d at 1112.  In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did. *See, e.g.*, *Schwarz v. Sec'y of Health and Human Servs.*,73 F.3d 895, 899–900, 906 (9th Cir. 1995) (affirming 75% cut to the number of hours billed where plaintiff succeeded on only 25% of his claims); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming 20% cut to hours where fee applicant block billed, because court relied on third-party report that block billing increased number of hours by 10–30%).

Here, the district court failed to give any "explanation of its reasons for choosing [any of its] given percentage reduction[s]." *See Gates*, 987 F.2d at 1400. The district court cut Plaintiffs' lodestar by the following six percentages: (1) a 35% reduction for Plaintiffs' "inappropriate and ambiguous billing format,"(2) a 20% reduction for billing entries for unrelated matters, (3) a 20% reduction for "[i]mpossible and ridiculous billing entries," (4) a 5% reduction for "[i]mproper billing entries," (5) a 10% reduction for "[e]ntries for clerical tasks," and (6) a 5% reduction for "[e]ntries for travel."[3] Applied cumulatively, these cuts reduced Plaintiffs' fee award by 66% from the lodestar.

Because the district court failed to justify the specific percentages it chose, it is not at all clear how these percentages were tailored to "trimming the fat from [Plaintiffs'] fee application." *See id.* at 1399. For example, we cannot tell from the district court's written decision why reducing the lodestar by 35% would compensate for Plaintiffs' poorly formatted billing records. The district court stated that such a reduction was warranted, because "the billing format makes the entire record virtually indistinguishable such that the Court cannot reasonably determine whether 'excessive, redundant, or otherwise

---

[3] We note that none of these reductions match *Kerr* factors which are presumably "subsumed" within the lodestar analysis. *See infra* note 11. We further note that, although the district court's categories seem similar, it does not appear that the district court engaged in impermissible double counting. Double-counting occurs when a court reduces a fee award more than once for the same issue. *See Moreno*, 534 F.3d at 1115-16. Though the district court utilized similar-sounding labels for different categories of billing-record issues, the court adequately distinguished the issues encompassed by each category.

unnecessary hours' have been billed." Even if this may accurately describe Plaintiffs' billing records, we can only conclude (based on the district court's explanation) that the district court selected the number thirty-five arbitrarily.[4]

The district court's other cuts suffer from the same problem. The court's stated reason for choosing to apply an additional 20% reduction for unrelated billing entries was that such entries "permeate[d] the billing records" and the "voluminous nature" of the records precluded the court from making "line-by-line deductions." However, the district court did not indicate that 20% was in any way proportional to the number of entries that suffered from this defect. Likewise, the district court failed to adequately explain why it cut

---

[4] The poor quality of billing records does not excuse the district court from its duty to give a "concise but clear" explanation for the reductions it might apply. *See Gates*, 987 F.2d at 1399 (quoting *Heiar v. Crawford Cnty.*, 746 F.2d 1190, 1204 (7th Cir. 1984)). Nevertheless, the fee applicant has the "burden of submitting detailed time records justifying the hours claimed to have been expended." *Wash. Pub. Power*, 19 F.3d at 1305. Therefore, if the fee applicant submits billing records that are so poorly organized that the district court cannot practicably rely on them to determine a reasonable number of hours, the district court may hold the applicant to its burden in several ways. First, the district court could simply cut the number of hours or the lodestar figure by as much as 10% (without explanation). *See Moreno*, 534 F.3d at 1112. Second, the district court could order the fee applicant to re-format and re-submit its billing records. *Wash. Pub. Power*, 19 F.3d at 1305. Third, the district court may itself re-structure the fee applicant's billing records into a usable format. *See Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999). Finally, in an egregious case, and particularly where the other approaches have been tried without success, a district court may "throw[] up its hands and refus[e] to award any fees whatsoever." *See id.* Ultimately, the district court has the discretion to select the method appropriate for any case, and it must "provide a concise but clear explanation of its reasons for the fee award." *See Gates*, 987 F.2d at 1398.

Plaintiffs' fees by an additional 20% for "nonsensical" billing entries. The court concluded that such entries were "not individual mistakes," but were "evidence of counsel's habitual inaccuracy and inefficiency evidenced throughout the entire billing record." However, the basis for the district court's selection of the 20% figure itself does not appear in the record.[5]

The district court made these cuts to the Plaintiffs' fee award in a way that further suggests it selected the specific percentages arbitrarily. For example, the district court first cut Plaintiffs' lodestar by 35% for Plaintiffs' poorly formatted billing records. The district court then cut the amount of fees that remained after making the 35% cut (i.e., 65% of the lodestar) by an additional 20% for unrelated billing entries. However, the district court had previously concluded that such billing entries "permeate[d] the billing records." That conclusion—that "unrelated billing entries" "permeate the billing records"—is irreconcilable with the district court's application of a 20% cut to a portion of the fee award that reflected only 65% of the full lodestar. If a 20% cut was warranted by a defect that occurred throughout the whole billing record, then logically that cut should be made to the full lodestar amount, which the district court had computed based on all the hours claimed in the billing records. Thus, the district court's methodology makes its

---

[5] The district court's justification for its 5% cut for billing entries related to meeting with the media and maintaining time records on the ground that "these entries do not seem to be as numerous as the other categories," fails for the same reason. Likewise, the district court provided no justification for choosing 5% as the proper amount by which Plaintiffs' remaining fees should be reduced for "several entries for 'travel.'" As with the district court's other percentages, we can only conclude that the district court chose these numbers arbitrarily.

decision to cut Plaintiffs' attorney's fees appear even more arbitrary, and falls short of the "concise but clear explanation" that we require for making across-the-board cuts to the number of hours or the lodestar.[6]  *See Gates*, 987 F.2d at 1400.

To summarize, on remand, the district court should compute Plaintiffs' lodestar based on a reasonable number of hours.  If the district court concludes that making one or more across-the-board cuts is the most practicable way to arrive at this figure, then it must provide a clear and concise explanation to justify the specific percentage cuts it decides to apply.

## B.  Reasonable Hourly Rate

In addition to computing a reasonable number of hours, the district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount.  *Ballen*, 466 F.3d at 746.  The "prevailing market rates in the relevant community" set the reasonable hourly rate for purposes of computing the lodestar amount.  *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *see also Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001) (noting that the district court "must use" the market rate "to determine a fee under § 1988").   "Generally, when

---

[6] When the district court re-determines the amount of the fee award on remand, it should also explain why it computed the lodestar figure for attorney Ellison based on 411.54 billable hours, a figure which Plaintiffs had corrected to 636.7 hours in a later court filing.  Because the district court gave no reason for rejecting Plaintiffs' corrected figure, we cannot conduct "meaningful appellate review" of its decision.  *See Schwarz*, 73 F.3d at 906.

determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (internal quotation marks omitted). Within this geographic community, the district court should "tak[e] into consideration the experience, skill, and reputation of the attorney [or paralegal]." *Dang*, 422 F.3d at 813 (internal quotation marks omitted). Importantly, the fee applicant has the burden of producing "satisfactory evidence" that the rates he requests meet these standards. *Id.* at 814.

Here, there is no indication that the district court computed Plaintiffs' lodestar figure using the market rate prevailing in the Central District of California for attorneys and paralegals of similar "experience, skill, and reputation" to members of Plaintiffs' legal team working on similarly complex matters. This alone requires us to vacate the fee award and remand. *See Camacho v. Brigdgeport Financial, Inc.*, 523 F.3d 973, 980–81 (9th Cir. 2008) ("[W]e remand to the district court with instructions to determine the proper amount of fees . . . by determining the prevailing hourly rate in the [forum] for work that is similar to that performed in this case, by attorneys with the skill, experience and reputation comparable to that of [Plaintiffs'] attorneys."). Nevertheless, we also address the district court's reasoning in determining the hourly rates on which it computed the lodestar.

After analyzing Plaintiffs' submissions, the district court concluded that Plaintiffs did not meet their burden of producing "satisfactory evidence" of the market rates. *Id.* Thus, the district court purported to "exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." However,

no Ninth Circuit case law supports the district court's apparent position that it could determine the hourly rates for the members of Plaintiffs' legal team, without relying on evidence of prevailing market rates. As discussed below, the district court's arbitrary determination of the hourly rates for Plaintiffs' attorneys reflects this faulty premise.

### 1.  Attorneys' Hourly Rates

The district court reduced the hourly rate Plaintiffs proposed for each of their attorneys by 25%.[7]   This determination was arbitrary.  It was not calculated to produce hourly rates that are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11.  The district court did not make a finding as to the reasonable hourly rate for each of Plaintiffs' attorneys, who varied in these respects.  Instead, the district court appears to have simply split the difference between hourly rates proposed by both sides for Plaintiffs' most-experienced attorney, and then extrapolated that result to *all* of Plaintiffs' attorneys, disregarding the varied levels of skill, experience, and reputation among them.  On remand, the district court must determine reasonable hourly rates based on "the prevailing market rates in the relevant community." *Dang*, 422 F.3d at 813.

---

[7] The court derived this number by, first, averaging hourly rates "at the high end" of the rates Plaintiffs and Defendants proposed. The court then determined that Plaintiffs' proposed high-end hourly rate exceeded that average by 25%.  The district court then reduced the rates Plaintiffs proposed for all of its lawyers—not just those whose proposed rates fell "at the high end" of the range—by 25%.

## 2.  Paralegals' Hourly Rates

The district court also failed to select an hourly rate for Plaintiffs' paralegals based on the prevailing market rate in the relevant community.  *See Perez v. Cate*, 632 F.3d 553, 556–57 (9th Cir. 2011).  Plaintiffs proposed hourly rates for their six paralegals ranging from $235 to $250 per hour, and Plaintiffs' fee expert indicated that paralegals at his own law firm billed from $125 to $235 per hour.  Among these figures, the district court selected, without explanation, $125 as the hourly rate for all paralegals involved in these cases.  Without such an explanation, we can only conclude that the district court selected this hourly rate arbitrarily.

## 3.  Plaintiffs' Remaining Challenges

Plaintiffs' other challenges to the district court's hourly rate determination fail.  First, the district court did not abuse its discretion by refusing to use the hourly rate Plaintiffs' attorneys had billed in two previous cases as evidence of a reasonable hourly rate.  Plaintiffs are correct that the rates billed by attorneys in those cases are potentially relevant to the district court's determination of the prevailing market rate in this case. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases, *particularly those setting a rate for the plaintiffs' attorney*, are satisfactory evidence of the prevailing market rate." (emphasis added)). Nevertheless, the district court analyzed both cases and concluded that they were distinguishable.  Significantly, the court determined that the cases were distinguishable based on factors that "are taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation." *See Cabrales v. Cnty. of L.A.*, 864 F.2d 1454, 1464 (9th Cir.

1988) (internal quotation marks omitted) (noting that computation of lodestar "[p]resumably" incorporates the following factors: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained"), *vacated on other grounds by* 490 U.S. 1087 (1989). On appeal, Plaintiffs do not address many of these distinguishing facts. Thus, they have failed to show that the district court abused its discretion by rejecting them.

Second, Plaintiffs argue that the district court should not have considered the rates that attorneys Koerner and Ellison claimed to be their current hourly rate in connection with certain motions filed earlier in the case as evidence of the reasonable hourly rate. In those motions, Koerner and Ellison claimed, under oath, that they billed at a rate lower than the rate they declared to be their current hourly rate in the instant fee application.[8] The district court concluded that these discrepancies undermined the credibility of Plaintiffs' "stated hourly rates." Citing no authority to back their argument, Plaintiffs contend that the district court improperly considered these rates, because the earlier motions "did not involve research or skill," and were therefore distinct from

---

[8] In June 2009, Koerner filed a motion for sanctions in connection with a motion to compel in which she sought compensation based on an hourly rate of $490 per hour. This was $60 per hour less than the rate of $550 per hour that Koerner requested in the current fee application. In June 2010, Ellison filed a notice of a motion to show cause, as well as a notice that—along with the show-cause motion—she would be requesting fees for time expended in bringing the motion. She filed a declaration in support of that fee request, which computed her fee based on an hourly rate of $300 per hour—$250 per hour less than the $550 per hour she sought in the instant fee application.

the litigation as a whole, which Plaintiffs characterize as "complex."

Plaintiffs are correct that the complexity of legal work affects the determination of the reasonable rate. *See Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds on denial of rh'g by* 984 F.2d 345 (9th Cir. 1993). However, Plaintiffs are incorrect to the extent they argue that the lower rates Koerner and Ellison claimed previously are irrelevant to this case. Koerner and Ellison both submitted billing records in this case that included entries for legal work no more complex than the legal work for which they sought compensation in the earlier motions. Accordingly, the record supports the district court's conclusion that these earlier declarations in the same case undermine the credibility of the declarations Plaintiffs later filed with their fee application.

Third, Plaintiffs challenge the district court's decision not to adopt the hourly rates suggested by Plaintiffs' fee expert, Barrett S. Litt. Relevant here, Litt's affidavit contained a two-column chart, listing law firms in the left column, and a corresponding hourly rate in the right column. The chart does not indicate the skill, reputation, or experience of the attorneys in those firms who billed those rates, or the types of work for which the firm billed those rates.

The district court rejected Litt's declaration for three reasons: (1) it relied on "confidential sources" for information regarding current hourly rates; (2) the declaration only listed rates by firm, not by attorney or practice area; and (3) the declaration cited rates charged by firms larger than the ones Plaintiffs' attorneys occupied. The district court soundly rejected Litt's affidavit on the first two grounds.    A

declaration that relies on confidential sources to establish the current market rate does not assist the court, because the reliability of the information cannot be tested. Likewise, simply listing the names of law firms and the hourly rates they charge, without more, would not assist the district court in determining whether attorneys of "comparable skill, experience and reputation" commanded those rates, *Dang*, 422 F.3d at 814, or did so while performing similarly "complex[]" legal work, *Davis*, 976 F.2d at 1545. Accordingly, the district court properly rejected this evidence.[9]

Fourth, Plaintiffs challenge the district court's reliance on (1) "possible areas of overbilling," and (2) poor results obtained as grounds for reducing the hourly rate. We reject this argument. The district court found what Plaintiffs call "overbilling"[10] and "poor results" to be evidence that Plaintiffs' counsel provided low-quality representation. District courts may reduce counsels' hourly rates based on such a determination. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000) ("Quality of representation is generally considered at the lodestar stage in

---

[9] We do not reach Plaintiffs' argument that the district court incorrectly rejected the Litt affidavit on the ground that Litt cited rates charged by large national and international firms. Whether the size of the law firm is a relevant consideration in determining a reasonable hourly rate appears to be a novel legal question. Because the district court permissibly rejected Litt's affidavit on two other grounds, we need not answer it here.

[10] The district court did not conclude that Plaintiffs' counsel had "overbilled." It did cite conduct by Plaintiffs' counsel that abnormally prolonged some stages of the litigation as among a "litany of ineffective lawyering." This litany provided grounds for the district court to conclude that "Plaintiffs' counsel failed to demonstrate the quality of representation that would be expected from attorneys charging such high rates."

determining what is a reasonable hourly rate."). The district court was well within its discretion to conclude that these factors indicated weak representation by Plaintiffs' counsel, which "weigh[ed] in favor" of reducing the requested hourly rates.

## C. Conclusion

Although the lodestar method produces an attorney's fee that is presumptively reasonable when correctly applied, *see Ballen*, 466 F.3d at 746, the district court's misapplication of the method in this case did not produce a reasonable attorney's fee. Thus, on remand, the district court should again compute an attorney's fee award by applying the lodestar method, consistent with the principles outlined in this opinion.

## II. Adjustments to the Lodestar

After computing the lodestar figure, district courts may adjust that figure pursuant to a "variety of factors."[11]   *See*

---

[11] The district court may make such adjustments based on the twelve "*Kerr* factors." *See Morales*, 96 F.3d at 363. These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

*Moreno*, 534 F.3d at 1111. Here, the district court did not explicitly reduce the lodestar based on any of these factors. Although the court did make across-the-board cuts to the lodestar, those cuts were apparently tailored to ensuring that the fee award included only a reasonable number of hours—they were not based on the factors we have recognized. At the same time, the record reflects that the district court was deeply concerned over the fact that Plaintiffs' attorneys requested considerably more in fees than their clients had recovered. Indeed, the amount Plaintiffs recover is one of the factors district courts may consider when making adjustments to the lodestar. *See Hensley*, 461 U.S. at 434 ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"). Thus, because the district court's consideration of this factor may have influenced its attorney's fee analysis, we discuss that factor here.

---

the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at n.8. (quoting *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). However, if the district court has "taken [any of these factors] into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation," then it should not again reduce the lodestar. *See id.* at 364 n.9. In fact, we "presum[e]" that the district court accounts for the following factors in the lodestar computation: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Id.* (citations and internal quotation marks omitted).

At its core, the district court's concern stemmed from the fact that Plaintiffs' attorney's fee request was more than double the amount that the Plaintiffs themselves had recovered. Thus, at the hearing on the motion for attorney's fees, the district court indicated that it would have approved Plaintiffs' fee request if the Plaintiffs had recovered twice as much as the attorneys requested in fees. The court further indicated that it would not approve the fee request Plaintiffs actually submitted, because counsel sought approximately double the amount their clients had recovered. To the extent this determination shaped the district court's analysis of the attorney's fee award, it was error.

It is not per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients. This is especially true in civil rights cases, where the dollar amount lawyers recover for their clients is not the sole measure of the results the prevailing parties' attorneys obtained. Attorneys who "win[] a civil rights claim" not only benefit their client in terms of the amount of money they recover, "they also confer benefits on others throughout society" by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct. *See McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir. 1994); *see also Corder*, 947 F.2d at 377 ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . ." (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989))).

Here, the eight cases against the City at issue in this appeal appear to be the type of civil rights cases that confer such non-monetary benefits, possibly justifying a higher fee award. The filing and prosecution of these lawsuits, all of

which alleged misconduct by City police officers, may have contributed to the City's loss of insurance coverage, and subsequent decision to shut down its beleaguered police department. *See* Ruben Vives, Jeff Gottlieb, & Hector Becerra, *Maywood Shuts Down to Stay Alive*, L.A. Times, June 23, 2010, at A1; *see also generally* Office of the Attorney General, California Department of Justice, In the Matter of the Investigation of the City of Maywood Police Department: Attorney General's Final Report (2009). Consequently, it would be wrong to evaluate the extent of the results Plaintiffs' counsel obtained based solely on the number of dollars they recovered for their clients. On remand, the district court should determine a reasonable fee amount in light of the context of this case, *see Moreno*, 534 F.3d at 1111 ("The number of hours to be compensated is calculated by considering whether, *in light of the circumstances*, the time could reasonably have been billed to a private client." (emphasis added)), not based on its own notion of the correct ratio between the amount of attorney's fees and the amount the litigants recovered.

## III.    Fees on Fees

The district court denied Plaintiffs' request for a fee award for time spent preparing the fee application. The court gave only the following reason to support its decision on this issue: "[G]iven the myriad of problems in Plaintiffs' presentation of their Motion, the Court declines to award Plaintiffs' attorneys' fees for preparing the Motion itself." On remand, the district court must reconsider this determination.

"[I]t's now well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable." *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir.

1996). This is so, even where the district court does not award the applicant the full amount of fees he requests. *See Harris v. McCarthy*, 790 F.2d 753, 758–59 (9th Cir. 1986) (affirming district court's award of fees incurred in connection with fees motion where counsel only received 11.5% of fees requested for merits work). We give no deference to the district court's one-sentence explanation (with no citation to authority) for its decision to award nothing for that work. *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1261 (9th Cir. 1987) ("The district court should clearly and concisely explain the grounds for its decision."). On remand, the district court should employ the lodestar method for determining a reasonable fee for Plaintiffs' attorneys' work on the fee application.

## IV.    State-Law Multiplier

Plaintiffs challenge the fee award on the ground that the district court erred when it failed to analyze whether Plaintiffs should receive a multiplier under California state law. The district court's silence on this issue makes "[m]eaningful appellate review . . . impossible." *See Narouz v. Charter Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010); *see also Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205 (9th Cir. 1986)) ("Absent some indication of how the district court's discretion was exercised, we have no way of knowing whether that discretion was abused."). Thus, on remand, the district court should analyze and explain whether Plaintiffs should receive a state-law multiplier.

**CONCLUSION**

We vacate the fee award and remand for a re-computation of the fee, because the district court exceeded the "great deal of discretion" it possesses when "determining the reasonableness of the fee." *Gates*, 987 F.2d at 1398. Although we remand for a re-determination of the fee award, we deny Plaintiffs' request to re-assign this case to a different district judge. There is "no reason to believe that the district judge will not follow both the letter and spirit of [our opinion]" on remand. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1041 (9th Cir. 2008).

**VACATED and REMANDED.** The parties shall bear their own costs on appeal. *See* Fed. R. App. P. 39(a)(4).